## WAITE LONGSHORE v. STATE.

No. A-4301.    Opinion Filed May 3, 1924.
(225 Pac. 573.)

(Syllabus.)

1. **Trial—When Instructions as to Principal and Accessory Proper.** All persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid and abet in its commission, must be prosecuted, tried, and punished as principals. and no additional facts need be alleged in any information against such an accessory than are required against his principal. Section 2574, Compiled Statutes 1921.

(a) It is only where the proof discloses that an accused was the principal offender in one offense and at the same time aided another to commit a like offense that the instructions to the jury should point which of the two is relied upon for a conviction.

2. Trial—Instruction on Weight of Evidence Supporting Good Character Erroneous. An instruction on the weight and import of evidence in support of the good character of the accused discussed and criticized in the opinion.

3. Larceny—Evidence Insufficient to Sustain Conviction. Evidence of guilt of larceny predicated solely on possession of recently stolen property, in view of conflicting inferences and presumptions arising therefrom, held insufficient in this case to support the verdict.

Appeal from District Court, Major County; J. C. Robberts, Judge.

Waite Longshore was convicted of larceny of an automobile, and he appeals. Reversed and remanded.

Tom E. Willis and B. F. Willett, for plaintiff in error.

The Attorney General and John Barry, Asst. Atty. Gen., for the State.

BESSEY, J. Waite Longshore, plaintiff in error, here referred to as the defendant, was convicted in the district court of Major county on January 13, 1922, of the larceny of an automobile, the property of one J. B. Nightengale, and his punishment was by the court assessed at imprisonment in the state penitentiary for a term of five years.

The defendant, a young man 24 years of age, an ex-service man, was a resident of Buffalo, Okla. He came to Fairview on November 11, 1921, in search of work, and that evening met H. B. Mitchell, a man whom he had known in Harper county. The defendant was by trade an automobile mechanic and had been going from place to place and from town to town inquiring at the various garages for work. He told Mr. Mitchell on this evening that he was out of work and

that he planned returning to Seiling, Okla., where he had last been employed; that he was out of money. Mitchell gave him 50 cents.

Defendant says he saw Mitchell again on the next evening, out near a bear and pony show, and that later in the evening he met a man who said his name was Ellis and who said he was going to drive to Seiling in a car; that he first met Ellis on the street, and that he later met him again, and Ellis asked him if he still wanted to go to Seiling. Defendant said he did, and they walked together to where some cars were parked, and there Ellis said to the defendant, pointing to a Ford touring car, "That is my car." Ellis got into the car, and defendant cranked it and then got in with him. They turned around in the street and started west, and as they drove across the street defendant again saw Mitchell and called out to him that he was on his way to Seiling.

Defendant and Ellis went straight west out of town, and when they had gone some 20 miles they ran out of gasoline. They pushed the car out onto the roadside and went to the home of Joe Ward, where they saw a light burning; this was about 11 o'clock at night. They informed Ward that they were out of gasoline. After some conversation, defendant told Ward where he lived and that he was a brother-in-law of Mr. Broberg, whom Mr. Ward knew. Ward invited the defendant to spend the night with him and gave him a half gallon of gasoline to get his car to the house with. Ellis excused himself from staying all night and stated that he would walk on to Seiling and that defendant could meet him there the next day, after procuring some gasoline. He left and was not seen again.

The defendant remained all night at the Ward home, and the next morning Ward told him that he would have to repair his car before he could go to Seiling to get more

gasoline. Ward phoned a neighbor, Mr. Noble, who was a mechanic and had automobile tools, to come over and assist him. The three spent two or three hours in repairing Ward's car, and Ward then went on to Seiling to get more gas. While he was absent, Noble offered to trade his car for the car here in question, and defendant told Noble that he could not trade because the car did not belong to him. Noble also wanted an air pump that was in the car, and defendant said the pump did not belong to him.

After Ward returned with the gasoline, defendant started on his way to Seiling and was met by the owner of the car and the deputy sheriff, who placed him under arrest. At the time of his arrest, defendant made some contradictory statements as to his name and how he came into possession of the car. Presently, however, he corrected these statements to the arresting officer, and, when taken to the county attorney's office, he told the county attorney his true name and how he happened to be in possession of the car.

At the trial the defendant introduced eight witnesses who testified that they had known the defendant for years and that his reputation for honesty, integrity, and industry was good, and that he had always been a law-abiding citizen. Among these witnesses was a deputy sheriff, the cashier of the First National Bank, a county judge, and an ex-county judge, all of Buffalo, defendant's home town.

Defendant's assignments of error relate to instructions given by the court, and the alleged insufficiency of the evidence to support the verdict.

As will be seen from a perusal of the statement of facts, defendant was found and arrested while in possession of the stolen car. Defendant's claim is that he came into possession of the car honestly, at the invitation of Ellis, who presumably

stole the car. The conviction rests upon the theory of the state that the defendant was a principal in the theft, or that he knowingly aided and abetted Ellis in the asportation of the stolen car. Upon that point the court instructed the jury as follows:

"The statutes of this state provide that all persons concerned who knowingly, wrongfully, and feloniously are interested in the commission of a crime, whether it be a felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, are principals."

Relying upon the holding of this court in the case of Gracy v. State, 13 Okla. Cr. 643, 166 Pac. 442, the defendant says that the instruction quoted was inapplicable and prejudicial in a case where the defendant's conviction rests upon testimony showing, or tending to show, that he merely aided or abetted another in committing the theft. The claim so made is untenable under the circumstances in this case. Section 1521, Comp. Stat. 1921, provides:

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals."

Section 2574, Comp. Stat. 1921, provides that all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid and abet in its commission, must be prosecuted, tried, and punished as principals, and that no additional facts need be alleged in any information against such an accessory than are required against his principal. Etter v. State, 11 Okla. Cr. 208, 144 Pac. 560; Bundy v. State, 16 Okla. Cr. 481, 184 Pac. 795; Radke v. State, 17 Okla. Cr. 230, 187 Pac. 500; Sanditen v. State, 22 Okla. Cr. 14, 208 Pac. 1040.

The reason why the above instruction was not proper in the Gracy Case, supra, was that in that case the proof showed that following one another two persons had committed rape upon the person of a female, under circumstances indicating that the accused, besides committing the crime himself, aided and abetted the other in committing the act. Clearly, an instruction such as was given, where two separate crimes had been committed, one in which the accused was the principal actor and the other in which he aided and abetted another, was misleading, but this instruction correctly states the law where but one offense is proved, as in this case.

The next assignment of error urged is that the court refused to give the following instruction:

"Gentlemen of the jury, the court instructs you that the instructions which the court has given you embody the law of this case, and the rules by which you are to determine the issues, aided by such knowledge as you each possess in common with all persons of average intelligence."

The court did instruct the jury that they were the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given the testimony of each; that they should take into consideration the whole of the evidence, giving to the different parts such weight as they thought the same were entitled to receive, etc. We hold that the instruction given was sufficient upon that point.

Defendant complains next of the refusal of the court to give the following instruction:

"Gentlemen of the jury, the court instructs you that the defendant has offered evidence touching his good character and general reputation in the neighborhood in which he lives as to truthfulness, honesty, morality, and industry, and as to his being a law-abiding citizen; and in this connection the court instructs you that such evidence is competent for your consideration together with all the other evidence in the case."

The court, in lieu thereof, gave the following:

"You are instructed that the law presumes that the defendant is a man of good moral character until the contrary is established by the evidence. In addition to this presumption, the defendant has offered evidence in this case for the purpose of showing that at and prior to the time of the alleged offense he was a man of good reputation for honesty, truth, and veracity in the community wherein he resides, and a man of good moral character. You are instructed that while this of itself is not a defense, you have a right to consider this class of evidence in connection with all the other evidence in this case in determining the guilt or innocence of the defendant."

The language used, "you are instructed that while this (good character) of itself is not a defense, you have a right to consider this class of evidence in connection with all the other evidence in this case in determining the guilt or innocence of the defendant," is technically a correct statement of law. As a declaration of fact it is incorrect; that is to say, sufficient positive proof of good moral character under some circumstances may be sufficient to warrant an acquittal, and so, according to the common understanding of men not versed in law, might be regarded as a defense. The language here used, according to the common understanding of jurors, might be erroneously construed by them to mean that evidence of good moral character was of little importance—an intimation by the court as to the weight of this kind of evidence. The declaration, "you have a right to consider this class of evidence," might reasonably imply that, while jurors have that right, they also have the right to entirely disregard it.

An instruction similar to the one above quoted was disapproved by this court in the case of Hall v. State, 12 Okla. Cr. 20, 151 Pac. 487; the instruction in that case being:

"You are further instructed that the defendants in this action have offered proof as to their good character in the community in which they live as law-abiding citizens. Yet this fact does not entitle the defendants to an acquittal in this case, but such facts as good character may be taken into consideration by the jury in determining the guilt or innocence of the defendant."

The court, in commenting upon this instruction, said:

"In some instances in which guilt would be otherwise established beyond reasonable doubt, evidence of good character may justly produce an acquittal."

In the case of McCullom v. State, 22 Okla. Cr. 46, 209 Pac. 781, the court lays down this rule:

"Ordinarily, an instruction on character evidence should be to the effect that such evidence should be weighed with all the other facts and circumstances in the case tending to raise a reasonable doubt as to the guilt of the accused, without designating or pointing out to the jury any particular issue involved."

In the case of Adair v. State, 15 Okla. Cr. 619, 180 Pac. 253, the court said:

"The state offers a high premium for good character. * * * Proof of such character may generate a reasonable doubt of guilt and thus work out an acquittal, where without such good character a proper conviction would result."

In this case practically the only incriminating circumstance was the possession of property recently stolen. The defendant offered what appears a reasonable explanation of this possession, indicating his innocence, which, together with his statements to others during the time of his possession, is sufficient in our judgment to overcome the inference that he was or might have been the thief. In addition, he offered an array of reputable witnesses from his home community, many of them men of prominence, who vouched for

his good character. We think that under such circumstances the instruction as given was defective and probably misleading; the statement that "proof of good character is no defense, but you have a right to consider this class of evidence," without further qualification or explanation, would cause the average juror to misinterpret the true rule.

Another instruction requested was as follows:

"Gentlemen of the jury, the court instructs you that after the consideration of the whole case, if any juror entertains a reasonable doubt of the guilt of the defendant, it is the duty of such juror so entertaining such reasonable doubt not to vote for a verdict of guilty, or be influenced in so voting, for a single reason that a majority of the jury should be in favor of such a verdict of guilty."

We are not ready to approve of this instruction as offered. The better plan would be to state it conversely, to the effect that all the jurors should concur in finding the defendant guilty beyond a reasonable doubt. However that may be, the other instructions given by the court touching upon reasonable doubt were sufficient upon that point.

The last assignment urged, that the evidence is insufficient to support the verdict, considered with the inferences and presumptions arising from the evidence in the case, leads us to conclude that this assignment should be sustained. The inference of guilt arising from possession of the stolen property was reasonably explained. In addition to that fact, there were the inferences and presumptions arising from good character, so that upon the whole case it seems that the evidence did not point to the guilt of the accused beyond a reasonable doubt.

For this reason, and for the defective and misleading instruction before discussed, the cause is reversed and remanded.

MATSON, P. J., and DOYLE, J., concur.