Kenneth John CODY, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error
No. A–12938.

Court of Criminal Appeals of Oklahoma.

April 5, 1961.

Albert J. Hoch, of Cargill, Cargill & Chiaf, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis. A. Wallace, Asst. Atty. Gen., for defendant. in error.

BUSSEY, Judge.

Kenneth John Cody, hereinafter referred to as the defendant, was charged by information in Oklahoma County with the crime of rape in the first degree after former conviction of a felony. He was tried by a jury, found guilty, and punishment of ninety nine years was assessed by them. Judgment and sentence were entered accordingly from which this appeal was taken.

It is only with great reluctance and after much forethought that we set forth as briefly as justice will permit, the details of the testimony presented in this case. The testimony was voluminous and seldom can language so shocking, sordid, and vile be found in the annals of justice.

The first witness called by the state was Elmo "PeeWee" McKelly, a Negro, who stated that he resided at 430 Northeast first street, in Oklahoma City, Oklahoma. He stated that he resided at this address at the time the alleged crime took place. He stated that he had known the defendant, Kenneth John Cody, casually for several years and that he first became acquainted with him at Tinker Air Force Base in Oklahoma City in 1941 or 1942; that he had not seen the defendant from that time until September 4, 1959, at which time the defendant came to his apartment with some choc beer; that defendant asked if it would be alright if he and his girl friend came in and drank the beer; that he admitted them and the girl friend was actually Mrs. Cody, prosecutrix herein and wife of the defendant but that he did not know it at that time; that after he and defendant had consumed a quantity of the beer, defendant asked him if he would like to have sexual intercourse with prosecutrx; that he told defendant, "I don't fool with white women", and told defendant and prosecutrix to leave, which they did. He testified that they returned later in the evening, on this date; that defendant informed him that she would not object to having sexual relations with him; that he refused and directed that they leave, which they did.

McKelly stated that he did not see defendant or prosecutrix again until September 10, 1959 and that this time they came to his apartment with prosecutrix clad only with a blouse wrapped about her waist; that they twice visited his apartment on this night and defendant each time insisted that McKelly engage in sexual relations with her; that defendant and prosecutrix engaged in an unnatural sex act in his presence at his apartment on this night; that she pleaded with defendant not to force her to have sexual relations with McKelly; that defendant forced her into a bedroom, held her on the bed and demanded that McKelly have sexual intercourse with her or he would kill both of them; that he did have intercourse with her; that there was a penetration; that she was being held by defendant during the act and that he did it only because he was afraid that the defendant would carry out his threats; that this was the only time that he ever had sexual intercourse with her and that he was being held at the time of this trial, in the county jail on a charge of rape in the first degree. He further stated that on the night this act occurred the defendant struck prosecutrix several times but that he never touched her until he was forced to by the defendant.

The state called Imogene Cody, Prosecutrix herein, as the next witness. The bulk of her testimony was narrative in form. She stated that she was the wife of the defendant; that she had been married to him late in the 1940's but they were divorced in the early 1950's when he was sentenced to serve a term in the state penitentiary for attempted rape; that they were remarried in 1956; that both of them had been married to third parties during the time they were divorced from each other; that her marriage during that time was to one Sid Haynes; that she was given psychiatric treatment for a mental breakdown by Dr. E. A. Philbrick in February and March, 1956; that on the 4th day of September, 1959, she was forced to accompany the defendant to various places including Elmo McKelly's apartment where

the defendant and McKelly attempted to force her to have sexual relations with McKelly; that McKelly struck her several times but she did not submit on this occasion and managed to escape; that her escape was accomplished when their two year old son, who was present with them at McKelly's on this date, started crying when she started screaming thus enabling her to escape to their car which was parked outside; that defendant drove home; that upon arriving at their home, defendant took her to the garage, tied her hands over a rafter and beat her and left her hanging there for a long time. This last statement was objected to as being too remote, prejudicial and not within the issues. The objection was overruled and the witness continued to testify in narrative form, as to events that took place on September 10, 1959, stating: that early in the evening on the 10th the defendant requested that she go with him to see about getting their car fixed; that after they had driven some distance the defendant told her that he was going to take her to see a friend, Jack Teague, and wanted her to let Teague feel of her private parts; that defendant said he would kill her if she did not comply with his demands; that they did see Teague at the V.F.W. Club in Oklahoma City and Teague came out to the car where she was; that defendant jerked her slim jims down and this man did feel of her private parts; that defendant urged him to have sexual relations with her and upon her begging and pleading, Teague did not have sexual relations with her; that defendant then took her to the Longhorn Cafe where Lloyd Givens came out to the car and the same thing that transpired at the V.F.W. Club, happened at this place; that while they were en route from place to place on the night of September 10, 1959, the defendant continuously beat her and demanded that she commit numerous unnatural sex acts upon him; that every time she attempted to resist or argue with him he would beat her; that he would not let her put her clothing back on at any time during the entire evening; that often she was rendered in a state of semiconsciousness or unconsciousness. She stated that the defendant took her to McKelly's apartment where she was dragged down some stairs and into the apartment by the defendant; that he held her down on the bed by placing his knees on her shoulders and holding her arms, while McKelly had sexual intercourse with her, through the combined force of McKelly and the defendant.

It should be observed that up to this point in her testimony, prosecutrix had testified to but one act of sexual intercourse as having occurred on the night of September 10, 1959.

She went on to testify that at all times she resisted and screamed but that her resistance was overcome by the defendant and McKelly; that after this first act of intercourse she smashed a lamp in an attempt to escape but defendant drug her to the car and they returned to the places they had visited earlier in the evening, whereupon defendant again insisted that various persons have sexual relations with her but no act was accomplished at any of these places; that they returned to McKelly's apartment and "it was practically the same thing that happened the first time."

At this point we note the second act of intercourse as testified to by prosecutrix. The above quotation is all that the prosecutrix said in relation to the second act of intercourse on direct examination and there was some doubt as to whether or not she actually intended to state that a second act was accomplished. However, the same doubt must have existed in the mind of defense counsel because it was resolved on cross-examination. When prosecutrix responded to the question as to what happened at McKelly's apartment the second time that she and the defendant were there, the following questions and answers appear in the case made:

"Q. How many times, Mrs. Cody, would you say that you had intercourse with this colored man PeeWee? A.

I didn't have intercourse with him at all, it was forced on me twice.

"Q. He forced himself upon you; is that right? A. Yes.

"Q. And what position were you in at the time you say he had intercourse with you or forced himself on you? A. I was on my back with my hips turned so that he was behind me.

"Q. On both occasions? A. On both occasions, yes.

"Q. And he had intercourse with you from the rear; is that right? A. Yes, that's right.

"Q. On both occasions? A. Yes.

"Q. Once on September 4th? A. No, both on that Thursday night, the 10th."

The prosecutrix then went into the details as to how the second act of sexual intercourse by McKelly was accomplished.

She further testified that after the second trip to McKelly's apartment, the defendant took her to the country where he hung her to a tree and beat her with a belt until she was unconscious, and when she regained consciousness he had leaned her over the trunk of the car, backward, and was applying his lighted cigarette lighter to her private parts and then threw her on the ground and carved on her abdomen with his pocket knife; that they then drove about the city and finally returned home. She stated that the next morning the defendant forced her to have unnatural sex relations with him; that she went to work and asked John Wilson, her employer, to take her to the police station, where she reported the events of the evening of September 10th to the police officers. She then gave a statement to the county attorney's office and was taken to the hospital where she was treated for several days. Several photographs of her injuries were taken at the hospital by police officers and she identified them. These pictures were admitted into evidence over the defendant's objection. She also identified a belt, cigarette lighter, and a knife alleged to have been the property of the defendant. These articles were introduced into evidence without an objection being raised by the defendant.

The State's next three witnesses were Jack Teague, Lloyd Givens, and David Carter. These witnesses testified as to the incidents described by prosecutrix which occurred at the various places visited by her and defendant, and their connection with said incidents. They stated that the defendant requested them to have sexual relations with prosecutrix but that they did not.

The State then presented the testimony of the investigating officers and the employer of prosecutrix, John Wilson, who testified about events which transpired on the day after the alleged crime. The State called Dr. L. D. Threlkeld, who attended the prosecutrix on the 11th of September. His testimony, in reference to history given to him by prosecutrix as to how she received the burns and bruises, was admitted over the objection of the defendant. He stated that he was present in the hospital room when the photographs were taken, and testified as to the extent of her injuries. At this point the State rested, and the defendant interposed a demurrer to the evidence. The demurrer was overruled and exceptions allowed.

The defendant's first witness was his mother, Mrs. Blossom Cody Bell. Her testimony tended to refute statements by prosecutrix on the witness stand wherein she stated that she did not drink intoxicants because they made her sick.

The defendant then called Dr. E. A. Philbrick and attempted to show by his testimony that the prosecutrix had been treated by him during February and March of 1955 for mental illness. The State objected to any testimony from this doctor and the objection was sustained. The defendant excepted and offered proof that the doctor's testimony would show that prosecutrix suffered a mental breakdown because of threats made by her then husband, Sid Haynes, during her marriage to him.

The defendant next called Officer Vaughn of the Oklahoma City Police Department who testified in reference to complaints

filed by Imogene Cody against her former husband, Sid Haynes, and the criminal records of certain witnesses who had testified for the State were offered in evidence. The defendant also introduced into evidence two criminal charges, charging him with assault and battery in a manner likely to produce death, and assault and battery with a dangerous weapon, in which the prosecutrix was the complaining witness, both charges arising out of the events occurring on September 10, 1959.

The defendant then took the stand and denied that prosecutrix ever committed any unnatural sex acts upon him, denied that he knew McKelly before September 4, 1959, and stated that prosecutrix showed him how to get to McKelly's apartment. He testified that on the evening of September 10, 1959, he had seen Jack Teague, David Carter, and Lloyd Givens, but denied having done anything prosecutrix said he did in regard to their conduct and his urging them to have sexual relations with her. He stated that while he was in the State Penitentiary, prosecutrix had engaged in the business of prostitution, and after their remarriage she had frequently expressed a desire to return to that business; that she was a heavy drinker of intoxicating liquors; that McKelly did have sexual intercourse with her on the evening of September 10, 1959, but that it was a voluntary act between McKelly and her, and that in fact he had caught them in the act which was much to his surprise and dismay. He admitted beating her with his belt, and stated that he had been advised to do so by members of the Oklahoma City Police Department. He further denied having burned prosecutrix with a cigarette lighter at any time and denied the incident in the garage as testified to by prosecutrix. The defendant then called Albert John Hoch, an attorney, who testified that he had taken a taped recorded interview of McKelly in the County Jail. The tape was admitted into evidence without objection and played for the jury. In the interview, McKelly denied ever having had sexual relations with the prosecutrix. The defendant then rested.

The state offered the testimony of Mrs. Mary Givens, the wife of Lloyd Givens, in rebuttal. Over the objection of the defendant she was allowed to tell what her husband said after he saw the defendant on the night of September 10, 1959 at the Longhorn Cafe. The court admonished the jury that this testimony was allowed only for the purpose of going to the credibility of defendant. The defendant's motion to strike this testimony was overruled by the court and exceptions allowed, whereupon, both sides stated that they rested.

In his appeal the defendant urges fifteen assignments of error which can be summarized under two general categories of error as follows: (1) that the trial court erred in overruling certain motions, demands and requests made by the defendant and (2) that the trial court erred by admitting and excluding certain evidence.

The first assignment of error deals with the information which reads as follows:

"* * * on the 10th day of September, A.D., in Oklahoma County, State of Oklahoma, Kenneth John Cody whose more full and correct name is to your informant unknown, then and there being, did then and there wilfully, unlawfully and feloniously commit the crime of Rape in the First Degree after Former Conviction of a Felony in the manner and form as follows, to-wit: That is to say, the said defendant in the county and state aforesaid, and on the day and year aforesaid, then and there being, did then and there wilfully, and unlawfully, wrongfully, and feloniously and by means of force overcoming the resistance and by means of threats of immediate injury and great bodily harm, accompanied by apparent power of execution, and preventing the resistance by then and there striking, beating, bruising and maltreating and holding one Imogene Cody, and did then and there have and hold sexual intercourse with the said Imogene Cody, a female of the age of 33 years, and not the wife of the said Elmore.

McKelly, but the wife of the said Kenneth John Cody, and the said defendant being a male person over the age of 18 years, to-wit: of the age of 34 years, said act of sexual intercourse being accomplished by the said Elmore McKelly after having by force, fear, aiding, and abetting of the said defendant, Kenneth John Cody, overcome the resistance of the said Imogene Cody, and without her consent and against her will; and the said offense of Rape in the First Degree after Former Conviction of a Felony being punishable by imprisonment in the State Penitentiary and having been committed by the said defendant as above set out after having been convicted of the crime of Attempted Rape in the First Degree on the 13th day of May, 1953, in Oklahoma County, State of Oklahoma, before the District Court sitting in and for said county and state, being District Court Case No. 21413, and said former conviction of Attempted Rape in the First Degree being a crime punishable by imprisonment in the State Penitentiary; contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Oklahoma * * *."

The defendant contends that this information is defective because (a) it fails to allege collusion, which he asserts to be a material element and (b) that it is duplicitous and defective in that it alleges more than one offense, and fails to fully advise him of the crime with which he was charged, in clear and concise language.

 In determining contention (a) we must consider 22 O.S. (1951) § 433 and 21 O.S. (1951) § 1111 (4) (5) and (8). The material part of those statutes provides:

22 O.S. § 433—"An accessory to the commission of a felony may be prosecuted, tried and punished, though the principal felon be neither prosecuted nor tried, and though the principal may have been acquitted."

21 O.S. § 1111—"Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances:

\* \* \* \* \* \*

"4th. Where she resists but her resistance is overcome by force and violence.

"5th. Where she is prevented from resistance by threats of immediate and great bodily harm, accompanied by apparent power of execution.

\* \* \* \* \* \*

"8th. Where she submits under the belief that the person committing the act is her husband, and this belief is induced by artifice, pretence or concealment practiced by the accused, or by the accused in collusion with her husband with intent to induce such belief. And in all cases of collusion between the accused and the husband of the female, to accomplish such act, both the husband and the accused shall be deemed guilty of rape."

In Myers v. State, 1921, 19 Okl.Cr. 129, 197 P. 884, 18 A.L.R. 1057, this Court decided that a husband cannot be convicted of rape where he forces his wife to have intercourse with another who believes that he is having intercourse with a common prostitute, with her consent. Upon an examination of the Myers case it will be observed that the holding therein was based upon a complete failure of the State to prove collusion between the husband and the principal perpetrator. In Bohanon v. State, Okl.Cr.1955, 289 P.2d 400, where the husband by threats of death forced his wife to submit to another who was acting in collusion with the husband, the Myers case was cited with approval. In both of these cases the State proceeded under 21 O.S. § 1111(8) and 22 O.S. § 433 was not considered. However, in the body of the opinion in the Myers case at page 885 of 197 P. the court stated: * * * "the husband may be guilty of the offense perpetrated on the wife

in any of the ways pointed out in the statute (referring to 21 O.S. § 1111) by collusion with the party actually committing the act, *or by aiding or abetting the principal perpetrator to commit the act, and not otherwise."* (Emphasis ours.) Thus it would appear that the husband could be guilty of rape upon his wife either as a colluder or as an accessory. In Chamblee v. State, 1930, 48 Okl.Cr. 337, 291 P. 143, this court decided that a person who aids and abets another in committing the crime of rape as defined in 21 O.S. § 1111 is guilty as a principal and may be convicted although the principal perpetrator be neither charged or convicted. In view of these authorities it follows that a husband may be charged as a principal under 21 O.S. § 1111 or 22 O.S. § 433. Therefore, since under the latter statute collusion is not a necessary element of the crime, it need not be specifically alleged. It is sufficient under this provision to allege that the defendant did aid and abet the principal perpetrator. A reference to the information set out herein reveals that the State did allege that the defendant aided and abetted Elmore McKelly. Thus it is clear that the State intended to proceed under 22 O.S. § 433 and the information was not rendered defective by the failure to allege collusion.

�In support of contention (b) the defendant asserts that he was charged with more than one crime in the information. Upon first reading of the information it would appear that the defendant is charged with having sexual intercourse with his wife, which was not a crime at common law nor is it a crime under the laws of our State. However, an information should not be read in a piece-meal fashion and parts read out of context with the whole. On the contrary, it should be considered in its entirety. When viewed in this manner the information herein charges the defendant with aiding and abetting Elmore McKelly in having intercourse with Imogene Cody by the use of force and fear in overcoming her resistance. We feel that this information sufficiently informed the accused of the offense with which he was charged with such particularity as to enable him to prepare for his trial. The offense was defined and identified sufficiently and this defendant will be able to defend himself against any subsequent prosecution for the same offense. Therefore the information meets the test laid down in Chamblee v. State, supra. Furthermore, this court has stated that we are certainly liberal in the construction of informations, and if there is any language by which we can reasonably state that a person of common understanding can know with what he is charged so that he will be able to plead jeopardy in case of a second charge for the same offense, then the information will be sustained. See Chandler v. State, 1953, 96 Okl.Cr. 344, 255 P.2d 299.

We feel compelled to observe that this information is not by any means a model to be followed by county attorneys in the future. It is poorly drafted and is awkwardly worded and should only be remembered as an illustration of how *not* to draft an information. It would have been simple to avoid this question by taking notice of the possible defect raised by the defendant's demurrer thereto, by amending the same.

Next, it is asserted that the trial court erred in refusing to delete or strike that part of the information alleging his former conviction of a felony. The statutory authority for the allegation of a former conviction of a felony is 21 O.S. (1951) § 51. In support of this contention the defendant cites Davidson v. State, 82 Okl.Cr. 402, 171 P.2d 640; Igo v. State, Okl.Cr., 267 P.2d 1082; Johnson v. State, 79 Okl. Cr. 71, 151 P.2d 801 and Sheppard v. State, Okl.Cr., 269 P.2d 791. The defendant asserts that since rape in the first degree is punishable by death, the rule set forth in those cases is applicable in the case at bar. The defendant reasons that his rights were prejudiced by the allegation of former conviction of a felony because the jury may have considered the allegation as evidence tending to establish his guilt.

We are constrained to agree that the cases cited prohibit an accused from being

tried on a charge of murder under an information alleging a former conviction of a felony when there is no instruction on lesser included offenses. Such has been the rule recognized by this court since Statehood. It is based upon the sound reasoning that since murder can only be punished by imprisonment in the penitentiary for life or by death in the electric chair, the allegation of a former conviction of a felony could not enhance the punishment. Such an allegation might influence the jury to return a verdict of guilty even though the evidence reasonably tending to establish guilt was slight.

 The charge here is Rape in the First Degree, and while denominated a capital offense, it carries a minimum punishment of 15 years in the State Penitentiary. This court has repeatedly held that where the minimum punishment is for a fixed term, it is not improper to allege a former conviction of a felony, although the maximum punishment may be death. In Sheppard v. State, supra, this principle is recognized in the body of the opinion at page 793. It is there stated that the allegation of a former conviction of a felony cannot be used in murder cases where the punishment can be only life imprisonment or death. The court went on to state that this reasoning * * * "does not apply to capital felonies such as rape or robbery with firearms which, although classified as capital felonies because the death penalty may be invoked, also carry a lesser penalty of a comparatively short term of imprisonment in the penitentiary." For a further discussion of the habitual criminal statute and when it may be invoked to impose enhanced punishment on conviction see Bow v. State, Okl.Cr., 273 P.2d 141 and Kunkel v. Raines, Okl.Cr., 353 P.2d 144. In view of the settled authority, we are of the opinion that the trial court did not err in refusing to delete or strike that part of the information alleging the defendant's former conviction on a charge of attempted rape.

The defendant's next contention is that the trial court erred in refusing to grant his demand for a public trial. He asserts that this refusal was in violation of his constitutional rights. In considering this contention we deem it necessary to refer to certain events which occurred prior to the trial.

Upon learning that the trial judge had refused to allow the presence of equipment used by the news media in the courtroom during the trial, the defendant filed a written demand for a public trial. This demand was refused insofar as the equipment used by the news media was concerned. The issue therefore is whether this action was in violation of the defendant's constitutional rights to a public trial.

The defendant asserts that the prosecutrix was a psychopathic personality and that her story was a fabrication, made up by her to protect herself and to obtain relief from an embarrassing situation. His theory is that the story, as related by the prosecutrix from the witness stand, would no doubt be misstated by the news media and thus prejudice his side of the case by not fully apprising the public in general. He projects this reasoning by asserting that since the general public became so misled and misinformed and therefore sympathetic toward prosecutrix, the jury was not able to consider the evidence without considering what the public reaction would be. On the other hand, the State contends that the exclusion made by the trial court was an exercise of discretion and was not abused by the trial judge. We are of the opinion that the contention of the State is correct.

 The most recent decision by this court upon the question is Lyles v. State, Okl.Cr.1958, 330 P.2d 734. In that case, the defendant therein contended that his constitutional rights had been prejudiced by the trial court's authorization of televising and photographing the defendant, prior to the commencement of the trial and during recesses. The gist of the opinion is that the use of television and radio equipment in the courtroom may be permitted or denied within the sound discretion of the trial judge.

The right to a public trial as guaranteed by our constitution is to prevent secret trials and Star Chamber proceedings, away from the view of the public. This guarantee is fulfilled when, as in the instant case, the proceeding is conducted at a place where any member of the general public can attend, subject to the rules of the trial court as promulgated by the presiding judge in reference to the conduct of visitors in the courtroom.

A cursory examination of the fact summation made at the outset of this opinion will clearly reveal that no public good could be achieved by transmitting into private homes or by displaying to our youth the sordid and perverted details in this case. In many instances the foulest conceivable language was used.

The next assignment of error relates to the opening statement made by the county attorney. First, the defendant asserts that the county attorney did not inform the jury in his opening statement that there was any collusion between the defendant and McKelly and since collusion is a necessary element in the case, under 21 O.S. § 1111, the county attorney failed to outline facts sufficient to constitute a crime under the laws of the State of Oklahoma. In dealing with the defendant's assignment of error in relation to the information and the failure to allege collusion we stated that collusion was not a necessary element. Therefore, this contention is without merit and need not be considered again.

Second, the defendant says that when the county attorney stated in his opening statement that "the State would prove that the defendant forced his wife to have sexual intercourse with McKelly, and forced said Elmo McKelly to have sexual intercourse with his wife," the State thereby was bound by this statement and under a rule set forth in the Myers case, supra, the defendant could not be guilty of the charge against him. This contention is predicated on the theory that if McKelly were forced to commit the act of rape on the defendant's wife, the same would be a good de-

fense and McKelly could not be guilty of rape. Therefore, since McKelly could not be guilty as a principal in the first degree, the defendant, as principal in the second degree, could not be guilty. This is not a new or novel theory by any means. It was the rule at common law and can be found in the dissent in State of North Carolina v. Dowell, 1890, 106 N.C. 722, 11 S.E. 525, 8 L.R.A. 297, and in the majority opinion in State of Louisiana v. Haines, 1897, 51 La.Ann. 731, 25 So. 372, 44 L.R.A. 837. The headnote in the Haines case states the rule concisely and accurately: "But where the 'other man' in the case, demanding a severance, is tried first, and acquitted, the prosecution against the husband falls, since he cannot be guilty of raping his own wife." The opinion in the Myers case refers to the dissenting opinion in State of North Carolina v. Dowell, and by dicta approves it. We are constrained to respectfully disagree with that approval and overrule that particular aspect of the Myers case. We think that the better view and more logical approach was taken in the majority opinion in State of North Carolina v. Dowell and deem it advisable to quote at length therefrom:

"* * * We have refused 'the blanket of the dark' to these outrages on female weakness and defenselessness. So it is now settled that, technically, a husband cannot commit even a slight assault upon his wife, and that her person is as sacred from his violence as from that of any other person. It is true that he may enforce sexual connection; and in the exercise of this marital right, it is held that he cannot be guilty of the offense of rape. But it is too plain for argument that this privilege is a personal one, only. Hence if, as in Lord Audley's case * * *, the husband aids and abets another to ravish his wife, he may be convicted as if he were a stranger. The principle is thus tersely expressed by Sir Matthew Hale: 'for, though in marriage she hath given up her body to her husband, she is not to be by him

**319**

prostituted to another.' (Citations omitted.)

"It thus appearing, we think beyond all question, that the defendant in this indictment is to be regarded as a stranger, we will further consider the case in that aspect alone. It is contended that, as Lowery acted under coercion, and was for that reason excusable, there was no intent to commit rape, and therefore the defendant cannot be convicted. It will be observed that the intent of Lowery to commit the offense is not determined alone by the presumption that everyone is presumed to intend the natural consequences of his act; but he testifies that he did actually attempt to have sexual connection. Here, then we have a specific, actual intent to commit the foul deed; and can it be that he who constrains the will of another to commit such a crime is to be permitted to shield himself upon the ground that there was an entire absence of criminal intent? If this be true, then one who coerces another to shoot down a third person in cold blood is not guilty of murder, because there was no intent for which the person doing the shooting is criminally responsible. The law in such a case couples the act of the instrument with the felonious intent of the instigator, and in this way he is held guilty of murder; and this is true also, where the instrument is under the age of seven, and conclusively presumed to be incapable of having any criminal intent. * * *"

For cases of like holding see Commonwealth v. Fogerty, 1857, 8 Gray 489, 74 Mass. 489, 69 Am.Dec. 264; People v. Chapman, 1886, 62 Mich. 280, 28 N.W. 896; People v. Meli, Sup.1922, 193 N.Y.S. 365; and Chamblee v. State, supra.

 We feel that any other decision would be in conflict with our statutory law in Oklahoma. We refer to 22 O.S. (1951) §§ 432 and 433, which abrogate the distinction between principals in the first and second degrees and provide that an accessory may be tried independently of his principal although the principal felon be neither prosecuted nor tried, and though the principal may have been acquitted. The State of California has almost identical statutory provisions and they have been held to apply to a fact situation similar to the facts presented upon the appeal in this case. Ex parte Kantrowitz, 1914, 24 Cal.App. 203, 140 P. 1078. Therefore, we hold that the defendant Cody can be tried and convicted for the rape of his wife as a principal.

The next assignment of error asserted is that the trial court erred in overruling the defendant's motion to elect which was made at the close of the county attorney's opening statement to the jury. This assignment of error is predicated upon the assertion that the information charged the defendant with two separate and distinct acts of rape and that the county attorney stated that two acts of rape would be proved in his opening remarks to the jury by repeating the information. For the reasons set forth in the part of this opinion dealing with the information, we are constrained to sustain the trial court's action in overruling the motion at this point in the proceedings.

This leads us to a consideration of one of the decisive principles of law in this case. As indicated in the fact summation, the prosecutrix testified that there were two acts of sexual intercourse accomplished by McKelly upon her person on the night of September 10, 1959. She testified that the defendant forced her to submit on each separate occasion. Her testimony discloses that the first act was committed in the early part of the evening. She stated that she and defendant left McKelly's apartment and visited numerous other places. Later they returned to McKelly's apartment where another act of sexual intercourse was accomplished.

A review of the case made discloses that the motion to elect was not renewed at any subsequent time during the course of

the trial. However, it has been held that "if no motion is made to require the state to elect, the trial court, of its own motion, should require the prosecution to elect upon which of said acts it will rely, or should treat the act of which the state first introduced evidence which tends in any degree to prove the offense as an election, and should by proper instruction limit the jury to a consideration of such particular act as a basis for conviction and limit the consideration of other acts as corroboration and as showing the relation of the parties." Cooper v. State, 31 Okl.Cr. 217, 238 P. 503, 504; Montour v. State, 11 Okl.Cr. 376, 145 P. 811; Gracy v. State, 13 Okl.Cr. 643, 166 P. 442; Smith v. State, 20 Okl.Cr. 124, 201 P. 663; and Pope v. State, 24 Okl.Cr. 213, 217 P. 498.

 This court further held in the Cooper case that a person may be tried for and convicted of only one offense at a time; that rape is not a continuous offense, and while in a trial upon a charge for rape proof of other acts of intercourse may be proven for the purpose of corroboration, and as showing the intimate relation between the parties, a conviction must be based upon but one act. In McManus v. State, 50 Okl.Cr. 354, 297 P. 830, this court stated that this rule is necessary for the reason that a defendant has a constitutional right to be put on trial for a single offense and for the further reason that he has a right to a verdict in which all of the jurors concur upon the same criminal act or transaction, citing Gracy v. State, supra; Williams v. State, 16 Okl.Cr. 54, 180 P. 559; Carter v. State, 24 Okl.Cr. 1, 215 P. 440; Longshore v. State, 27 Okl.Cr. 128, 225 P. 573; Lee v. State, 32 Okl.Cr. 117, 240 P. 148; and Cooper v. State, supra.

 In the case at bar the trial court failed to instruct the jury as required under this rule. Such failure was a substantial deprivation of the defendant's constitutional and statutory right to be put on trial for a single offense. It would be impossible for the defendant to plead former jeopardy to a subsequent charge of rape arising out of the events that took place on the night of September 10, 1959. It is only by sheer speculation that this court could assume that the jury's verdict was based on one act of sexual intercourse. Some of the jury could have believed that two acts of sexual intercourse occurred and based their verdict on that belief while others may have believed that only one act occurred and based their verdict thereon. Consistent with the prior decisions of this court we hold that the trial court's failure to properly instruct the jury on this fundamental principle of law is reversible error. The recent case of Dugan v. State, Okl.Cr., 360 P.2d 833, contains a model instruction and should be followed in instances where the trial court has a duty to make and instruct on the matter of election.

This leads us to a consideration of the next general assignment of error category. Initially the defendant asserts that the trial court erred in allowing prosecutrix to relate incidents that had happened on September 4, 1959, some six days prior to the act complained of in the information.

The record discloses that according to the testimony of prosecutrix, the events which took place on September 4th at McKelly's apartment were almost identical to the events which took place at McKelly's apartment on the night of September 10, 1959. On the night of September 4th, the act of sexual intercourse was not accomplished because the prosecutrix managed to escape.

 The rule determinative of this question is announced in Roulston v. State, Okl.Cr.1957, 307 P.2d 861, 867. This rule is that "evidence of a separate and similar offense is not admissible against the accused on trial for another specific offense; that, when the accused is put on trial for one offense he is to be convicted, if at all, by evidence which shows him guilty of that offense alone and proof of guilt of one or more similar offenses unconnected for that which he is on trial must be excluded." This case further demonstrates that there are five exceptions to this well established

rule. Under these exceptions, testimony of other offenses may become competent when it is material and proper to show (1) Motive, (2) Intent, (3) Absence of mistake or accident, (4) Identity of the person charged with the commission of the crime for which he is on trial, and (5) Common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other.

We feel that the case at bar comes within the exceptions to the rule announced in the Roulston case. The motive of the defendant is evident in each of the acts related by the prosecutrix. It was his motive to degrade, and humiliate her. It was his intent to force her, against her will, to have illicit relations with other men. It was his common scheme or plan to subjugate her will to his, by the use of force and fear, for his own distorted and perverted purposes. Based upon the rule and the exceptions thereto, the trial court did not err in allowing the testimony in question.

Next, the defendant asserts that the trial court erred in admitting testimony by the prosecutrix relating to alleged beatings inflicted upon her by the defendant prior and subsequent to the time when the crime charged is alleged to have occurred. Specifically, prosecutrix was permitted to relate an incident that happened on the night of September 4, 1959. She stated that the defendant tied her hands to a rafter in their garage and beat her. Near the conclusion of her testimony she related details of another beating. She stated that on the evening of September 10, after the last act of sexual intercourse had been accomplished, the defendant drove her to the country, hung her to a tree with her blouse, beat her, cut her with a pocket knife, and burned her with a cigarette lighter.

In considering this testimony we are again confronted with the rule in the Roulston case, supra. The testimony in question was admissible under the exception to show motive, intent, and a common scheme, plan, purpose or design.

The defendant asserts that the trial court erred in allowing certain photographs to be introduced and received into evidence. The photographs were taken of prosecutrix at the hospital on September 11 and show her physical condition as it existed at that time. They show bruises and burns about her body, alleged to have been inflicted upon her by the defendant in the beatings earlier referred to. The defendant asserts that the photographs had no probative value and were offered for the sole purpose of arousing prejudice against him.

This Court has held that photographs and pictures are admissible where they illustrate or clarify some issue of the case and whenever they are relevant to describe a person, place or thing, pictures shown to be a faithful reproduction of whatever they purport to reproduce are admissible for the purpose of assisting the court or jury in understanding the situation. See Roberts v. State, 82 Okl.Cr. 75, 166 P.2d 111; Cooper v. State, 61 Okl. Cr. 318, 67 P.2d 981; and Oxendine v. State, Okl.Cr., 335 P.2d 940. The photographs of the prosecutrix are material to the issue of whether the defendant used force to overcome her resistance while aiding and abetting McKelly in accomplishing each act of sexual intercourse. They clearly show bruises and burns which tend to corroborate the testimony of prosecutrix.

The defendant next asserts that it was error for the trial court to allow a belt, pocket knife, and cigarette lighter, alleged to have been used by him in inflicting injuries upon prosecutrix, to become a part of the evidence. The record reveals that the defendant did not object to the introduction of this evidence and therefore the question of its admissibility is not properly before this Court. However, it should be observed that the defendant admitted taking the prosecutrix to the country and beating her. He de-

nied having burned her with a cigarette lighter, cutting her with a pocket knife, but did admit beating her with a belt. The defendant introduced two informations into evidence which charged him with assault and battery in a manner likely to produce death and assault and battery with a dangerous weapon, which arose out of events occurring subsequent to the alleged act for which he was brought to trial. This evidence tended to corroborate the testimony of the prosecutrix. Since the defendant failed to object to the introduction of the belt, knife and cigarette lighter, failed to object to the testimony of prosecutrix relating to the beatings of September 10, 1959 and then introduced corroborating evidence by way of the two criminal charges filed against him, we are compelled to hold that this assignment of error is without merit.

The next assignment of error is that the trial court erred in admitting the testimony of John Wilson. Mr. Wilson was a supervisor over Mrs. Cody in her employment with an insurance company in Oklahoma City. He was permitted to testify, over the defendant's objection, the details of statements made by prosecutrix to him on September 11, the day after the alleged rape. In the statements to Wilson, prosecutrix identified the defendant as author of her injuries and detailed the manner in which they were inflicted. Along this same line, witnesses Lieutenant Hilton Geer and Doctor L. D. Threlkeld were allowed to testify, over the objections of the defendant, in detail as to what prosecutrix said in a narration of the events of the evening of September 10. In the narration to these two witnesses she described how the defendant had beat and burned her and some of the events that took place at McKelly's apartment.

■ The testimony of these witnesses, relating the statements of prosecutrix made the day following their occurrence was clearly inadmissible and prejudicial to the defendant under the rule set forth in Coppage v. State, 76 Okl.Cr. 428,

137 P.2d 797. In substance the rule is that the one to whom complaint has been made may testify to the making of the complaint by the prosecutrix, and her condition and appearance at the time the complaint was made, but may not be permitted to testify to statements made by the prosecutrix as to the details of the outrage as reported to the witness. If the statement made is such as may be a part of the res gestae it is admissible; but if the time is such as to give an opportunity for fabrication or falsification, it does not come under the rule of res gestae and is therefore inadmissible.

The length of time involved in the Coppage case was less than an hour. In the case at bar, the time lapse ranged from 10 to 13 hours.

The reason for the rule is that any substantial lapse of time will provide the prosecutrix with an opportunity to fabricate her story. To allow other witnesses to repeat the statements made by the victim of an alleged outrage to them tends to overemphasize the victim's testimony and is likely to convince the jury that the trial court, in allowing the testimony to be admitted over a defendant's objection, believed the same to be true.

The testimony of Mrs. Lloyd Givens was offered in rebuttal by the state. Her testimony related statements made to her by her husband concerning statements the defendant had made to him on the night of September 10. The admission of this testimony, over the defendant's objection, was clearly error. It was the rankest kind of hearsay and its admission cannot be justified under any rule of law or evidence.

■ The next assignment of error is is that of the lower courts refusing to allow Doctor E. A. Philbrick to testify. An offer of proof was made by the defendant to show that prosecutrix had been treated by this doctor in 1956 for a nervous breakdown. The doctor stated that in his opinion the nervous breakdown was due to threats, made by her then husband, Sid Haynes, to kill her. In reviewing the record we find

that prosecutrix did not testify about her mental condition in 1956 on direct examination. However, when questioned about this matter on cross-examination, her testimony was substantially in accord with the testimony which the defendant sought to prove by Dr. Philbrick. The defendant argues that the confidential relationship of doctor-patient was waived by prosecutrix because of the import of her answers on cross-examination. It is submitted that this testimony was admissible for the purpose of impeaching the credibility of prosecutrix under the rule set forth in Hudman v. State, 89 Okl.Cr. 160, 205 P.2d 1175, and other cases cited by the defendant. In the Hudman case this court held that the trial court erred in excluding evidence tending to show that prosecutrix had charged several prominent men of the community with having had sexual relations with her and subsequently admitting the falsity of these charges. In the case at bar, there is nothing in the testimony of Dr. Philbrick which, had it been admitted, would have impeached the testimony of the prosecutrix. The evidence of her past mental condition was too remote to have any probative value. Since the evidence offered through Dr. Threlkeld related only to the physical and emotional condition of prosecutrix, as it existed on the day after the alleged crime was committed, this would not justify allowing the jury to consider the testimony of Dr. Philbrick.

 The next assignment of error is that the trial court erred in overruling the defendant's motion for a directed verdict. A close examination of the record discloses that the evidence presented on behalf of the state and the defendant, was conflicting in many aspects. However, the defendant bases this contention upon the theory that no evidence of any collusion or agreement on the part of the defendant with McKelly was proved. As earlier indicated in this opinion, the allegation of collusion was not necessary and therefore it was not necessary to prove the same. Furthermore, it is a fundamental rule that it is the sole province of the jury to determine the guilt or innocence of an accused when conflicting evidence has been adduced.

Next, the defendant asserts that the trial court erred in not advising him of the instructions that would be given or when they would be given. In considering this assignment of error it is necessary to refer to the manner in which the trial judge proceeded when both sides announced they rested.

As soon as the state announced that it rested, the court immediately began reading the instructions. When the court completed the reading of the instructions, it was late and the jury was recessed until the next morning. The defendant asserts that this prevented him from presenting his requested instructions, which he states he had at that time and was prepared to present to the court. An objection was immediately interposed, upon the ground that he had not had an opportunity to see the instructions and at this time the court was informed of the sixteen requested instructions. The trial court accepted the requested instructions and took them under advisement over night. The next morning, before the jury was sent out to deliberate, the trial court supplemented the instructions already given with some of the defendant's requested instructions. Thus it appears that the trial court did consider the requested instructions and used them insofar as he deemed them applicable. Although this was not the usual procedure followed by trial courts at the instruction stage of the case, we are of the opinion that since the requested instructions were considered by the trial judge and given to the jury, insofar as they were deemed to be applicable, the defendant's rights were not prejudiced.

 Next, the defendant asserts that it was error for the trial court to refuse to permit his counsel to be heard upon the law of the case, citing the dissent in Jenkins v. State, 80 Okl.Cr. 328, 161 P.2d 90, 162 P.2d 336. In the majority opinion of that case it was held that such action will cause this court to carefully scrutinize the instructions given and if it is found that the trial court has omitted to instruct fully and correctly

as to every principle of law applicable to the case, or that any of the instructions given by the court to the jury are erroneous and may have misled the jury in arriving at a verdict, to the injury of an accused, then the judgment of the lower court will be set aside and a new trial will be granted. Therefore, the question arises as to whether the instructions given by the trial court were erroneous.

The instructions reveal that the trial court did not treat the act of which the state first introduced evidence which tended in any degree to prove the offense as an election and did not limit the jury to a consideration of such particular act as a basis for conviction and limit the consideration of other acts as corroboration and as showing the relation of the parties. This is required under Cooper v. State, supra, and other cases cited for this proposition earlier in this opinion. This omission by the trial court constitutes reversible error.

There are other assignments of error urged by the defendant. In view of the foregoing opinion we deem it unnecessary to consider them at length except to observe that we agree with the defendant's contention that the instruction on the included offense of rape in the second degree was not justified under the evidence presented on the trial of this cause. We are confident that unless there is evidence presented upon the new trial requiring such instruction, it will not be given.

In conclusion we observe that the crime with which the defendant was charged is of such a vile and loathsome character that it offends and outrages the decency of mankind.

Under our system of jurisprudence there is but one standard by which our laws are interpreted and enforced. That standard is known as Due Process of Law. It guarantees a fair and impartial trial to the guilty and to the innocent alike. It is the unique symbol of freedom and democracy and when denied to any citizen, it results in a denial to all.

The record in the case at bar compels us to conclude that the defendant's right to a fair and impartial trial was denied. For the reasons stated herein, this case is reversed and remanded for a new trial consistent with the views expressed herein.

NIX, P. J., and BRETT, J., concur.