**Benjamin William SCOTT, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–81–785.**

Court of Criminal Appeals of Oklahoma.

Aug. 10, 1983.

Johnie O'Neal, Asst. Public Defender, Tulsa, for appellant.

Jan Eric Cartwright, Atty. Gen., Dena L. Bates, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

The appellant, Benjamin William Scott, was charged, tried and convicted in the Tulsa County District Court in Case No. CRF–80–3311 for the offenses of Rape in the First Degree, Burglary in the First Degree and Assault and Battery with Intent to Kill, all After Former Conviction of Two or More Felonies, in violation of 21 O.S. 1981, § 1114; 21 O.S.Supp.1980, §§ 1431, 652 and 51 respectively. The trial court sentenced the appellant to two hundred (200) years' imprisonment for Rape in the First Degree, seventy-five (75) years for Burglary in the First Degree and three hundred (300) years for Assault and Battery with Intent to Kill, to run consecutively. From these judgments and sentences, the appellant appeals.

The victim, R.H.S., awoke at approximately 1:00 a.m. on May 7, 1980, to find a man holding a pillow over her face and a sharp object at her side. The man, who the victim subsequently identified as the appellant, led the victim through her house, searching for her purse. At that time, R.H.S. glanced at him and saw his profile with the light from a window behind him.

After finding the purse, the appellant took R.H.S., back to the bedroom and, in the dark, forced her at knifepoint to remove her clothes, raped her, took her to the bathroom to wash herself and returned her to the bedroom while he continued to search the house. When he returned to the bedroom, the appellant began to smother R.H.S. with a pillow, stopping his efforts just before she lost consciousness. The appellant then raped her again, repeated the procedure in the bathroom, tied her up and taped her mouth with adhesive tape. Once again, the appellant attempted to stop her breathing, but revived her before she lost consciousness. Although the appellant repeatedly asked her to come with him, R.H.S. refused. When she was positive that he had left, she went through her house and discovered that he had closed all the windows and turned on the gas to her

stove while extinguishing the pilot lights. R.H.S. then dressed, drove to her sister's house, called the police and, later, went to a hospital for an examination.

Following the suggestion of the police, R.H.S. installed L-braces on all her windows except one which was seven feet above the ground. On May 13, 1980, R.H.S. was again asleep in her house when the door burst open and a man, wearing a mask which came down to his nose, entered. She testified that she knew he was the same man because she recognized his voice. After some eight to ten minutes, she managed to escape and seek assistance. At a lineup on September 18, 1980, R.H.S. positively identified the appellant as the assailant.

Rebecca Pratt, a forensic chemist, then testified that hair samples from the bathtub were consistent with the appellant's and that testing of the appellant's blood and saliva revealed that the hair from the bathtub and the body fluids could have come from the same person.

The only evidence presented by the appellant was the testimony of his mother that he remained at home with her on both nights.

### I.

In his first assignment of error, the appellant asserts that the trial court erred by overruling his motion to suppress the victim's in court identification. The appellant maintains that the State's evidence did not establish that the in court identification was based on a reliable source independent from the pre-trial lineup which the appellant alleges was suggestive. Furthermore, the appellant argues that, since no counsel represented him at the lineup, this procedure violated his Sixth Amendment right to counsel recognized by the United States Supreme Court in *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) and *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

■ In both *Kirby,* supra and *Wade,* supra, the Supreme Court held that the right to counsel does not accrue until the initiation of the formal proceedings against the accused. However, the appellant points out that even though the State had not filed the charges involved in the instant case against him prior to the lineup, the State had filed charges against him concerning another case on the day before this lineup. Thus, the appellant argues that his right to counsel existed at the time of the lineup due to the filing of the other charges.

The defendant in *Young v. State,* 531 P.2d 1403 (Okl.Cr.1975) presented the same contention on appeal. In *Young,* this Court held that a defendant's right to counsel in one case does not accrue with the filing of charges in a separate case. Therefore, this argument is without merit.

■ The appellant's other allegation, that the lineup was suggestive and thus tainted the in court identification, rests mainly on the physical differences of the participants in the lineup and the victim's inability to observe the assailant's face clearly on both occasions. This Court set forth guidelines which must be followed in every lineup in *Thompson v. State,* 438 P.2d 287 (Okl.Cr.1968). Those guidelines provide that the subjects of a lineup must have the same general weight, height, age, color and nationality.

■ In the instant case, the lineup consisted of four black males whose ages ranged from twenty-five (25) to thirty (30) years. The first participant was six feet, one inches tall and weighed 160 pounds. The second man stood five feet, eight inches tall and weighed 130 pounds. The third participant was the appellant whose height and weight are five feet, nine inches and 170 pounds. The final person was five feet, eleven inches tall and weighed 191 pounds. The appellant introduced a photograph of the lineup during the trial, however, it was not made available for review on appeal. Therefore, based on the aforementioned physical characteristics of the participants, we cannot say that the pre-trial lineup was impermissibly suggestive.

The United States Supreme Court, in *United States v. Wade,* 388 U.S. 218, 87

S.Ct. 1926, 18 L.Ed.2d 1149, provided a test to determine whether an in court identification is independently reliable from the pretrial identification procedure. The elements of the test are as follows:

> [T]he prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup.

Applying these elements of the facts of the instant case reveals that the trial court's decision to overrule the appellant's motion to suppress the in court identification did not violate his due process rights and we will not disturb that decision.

## II.

■ The appellant's second proposition of error is that the trial court should not have allowed the victim to testify about the pretrial lineup. To support his argument, the appellant cites *Mintz v. State*, 593 P.2d 1093 (Okl.Cr.1979). However, we stated in *Mintz* that a witness could testify about an extrajudicial identification if the witness made an in court identification which met the guidelines of *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and *Thompson v. State*, 438 P.2d 287 (Okl.Cr. 1968). Since the victim's in court identification satisfied this requirement, the testimony was properly admitted.

## II.

■ In his third assignment of error, the appellant asserts that the duplicity of the information violated his constitutional right to a unanimous verdict. The basis for this assertion is the fact that Count II of the information stated that the appellant committed a burglary on May 7, 1980 with the intent to commit both larceny and rape. The appellant argues that since the court included two predicate felonies, the jury could not possibly determine which one served as the basis for the burglary. He further maintains that the trial court's failure to instruct on the crime of larceny aggravated this error.

This Court held, in *Tahsequah v. State*, 602 P.2d 232 (Okl.Cr.1979), that if the defendant does not file a motion to quash the information prior to entering a plea, the defendant waives any defects in that information. In the instant case, the appellant filed a motion to quash the information for reasons other than duplicity on January 13, 1981. According to the record, the appellant entered a plea of not guilty on November 14, 1980. Therefore, any possible error was waived.

Furthermore, the appellant did not object to the trial court's omission of an instruction regarding larceny nor did he submit such an instruction. The appellant's failure to do so waived any further objections to the instructions. See, *Jetton v. State*, 632 P.2d 432 (Okl.Cr.1981).

## IV.

■ The appellant then contends that the State charged him with only one count of rape while the victim testified that he raped her twice during the two hour period on May 7, 1980. Relying on *Cody v. State*, 361 P.2d 307 (Okl.Cr.1961), the appellant argues that the failure of the State to elect which act of rape it would rely on to prove guilt violated his right to a unanimous verdict as provided in Article 2, Section 19 of the Oklahoma Constitution.

In *Cody*, this Court held that the rape was not a continuous offense and a conviction must be based on one act. However, that case is distinguishable from the instant case. The victim's testimony, in *Cody*, varied as to whether one or two acts occurred while the victim's testimony in the instant case remained unchanged.

The appellant also relies on the statements in *McManus v. State*, 50 Okl.Cr. 354,

297 P. 830 (1931), that the trial court has the duty to require an election between the offenses. However, this Court provided an exception that, if the separate acts were treated as one transaction, the aforementioned rule did not apply. Some situations which fall within the exception are when a continuous application of force is used and no reasonable doubt exists as to the occurrence of each act. In the instant case, the victim's testimony left no reasonable doubt as to the occurrence of both acts. Therefore, this assignment of error is without merit.

## V.

■ The appellant maintains, in his fifth assignment of error, that the trial court's failure to instruct the jury on the limited effect of the evidence of other crimes constituted reversible error. The evidence of other crimes which the State introduced was the incident of May 13, 1980, when the appellant returned to the victim's residence. The victim testified that this second confrontation with the same person gave her another opportunity to look at him. The trial court then overruled the appellant's motion in limine during the pretrial motion hearing as the evidence went towards establishing the identity of the man who committed the crimes on May 7, 1980.

When the State introduced the evidence at trial, the appellant raised an objection which the court overruled. However, the trial court did not then instruct the jury as to the limited effect of the evidence. The only instruction given regarding this evidence was Instruction No. 14 which read as follows:

> You are instructed that you have for your sole consideration at this time the conviction of the defendant as to the three crimes alleged.

The appellant objected to this instruction and submitted an alternative instruction which referred to the amount of care the jury should use when considering an identification because of human error. The trial court rejected this instruction.

Thus, the appellant did not object to the instructions, or lack thereof, for the reason given in this assignment of error. Furthermore, the State filed a notice of intent to show evidence of other crimes almost three weeks prior to the trial. The appellant received sufficient opportunity to prepare all possible objections and requests involving this evidence. Failure of the appellant to either request an instruction or object to the court's instruction cannot allow him to obtain a reversal of his conviction. We stated, in *Wade v. State,* 624 P.2d 86 (Okl. Cr.1981), that the trial court's failure to give a cautionary instruction on evidence of other crimes was harmless in the face of overwhelming evidence of guilt. That same statement applies to the instant case.

## VI.

■ In his final assignment of error, the appellant contends that the sentences are excessive. In *Edwards v. State,* 645 P.2d 528 (Okl.Cr.1982), this Court stated that:

> [[T]he question of excessiveness of punishment is to be determined by a study of all the facts and circumstances surrounding each individual case, and we do not have the power to modify a sentence unless we can conscientiously say that under all the facts and circumstances the sentence was so excessive as to shock the conscience of the Court. *Dodson v. State,* 562 P.2d 916 (Okl.Cr.1977). Considering the evidence of the defendant's guilt, his previous convictions, and the fact that the sentence imposed was within the statutory limit, we cannot conscientiously say that the sentence assessed shocks the conscience of this Court.

The defendant in *Edwards* received a three hundred (300) year sentence for Rape in the First Degree, After Former Conviction of Two or More Felonies. Therefore, in the instant case, we cannot say the sentences are excessive.

For the above and foregoing reasons, the judgments and sentences of the trial court are hereby AFFIRMED.

BUSSEY, P.J., and CORNISH, J., concur.