**Larry Charles CLONCE, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–77–842.**

Court of Criminal Appeals of Oklahoma.

Dec. 21, 1978.

Rehearing Denied Jan. 22, 1979.

Robert S. Durbin, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., Carol Elaine Alexander, Legal Intern, for appellee.

## OPINION

CORNISH, Judge:

Appellant, Larry Charles Clonce, hereinafter referred to as defendant, was convicted in a bifurcated trial in the District Court, Rogers County, Case No. CRF–76–137, of the crime of Grand Larceny, After Former Conviction of a Felony. He was sentenced to ten (10) years in the Oklahoma State penitentiary.

The State's first witness, Kenneth Delozier, an agent for a freight delivery company in Claremore, Oklahoma, testified that he received a shipment of Goodyear passenger car tires at about 2:00 a. m. on July 21, 1976. They were placed next to the loading dock outside the building. The tires had "Chrysler Products" written on them in yellow crayon. The witness stated that on his return from breakfast, about 7:00 a. m., he saw a red Dodge pickup with a black vinyl top coming out of the alley with some tires in it. He did not see the person inside the pickup. As he looked down the alley, he saw that some of the tires were missing. At that time, he thought he recognized the pickup as belonging to an employee of Chrysler Products at Claremore, to which company the tires were to be delivered. But then he observed that the pickup left town by a route inconsistent with delivery to Chrysler Products. Thereafter he went to Chrysler Products to determine who owned the pickup, where he discovered that an employee had recently sold such a pickup to the defendant. The witness learned the local address of the defendant, which was in Rogers County, and reported the incident to

the Claremore Police between 8:30 and 9:00 a. m. At trial, the witness identified State's Exhibits Nos. 1 and 2 as being Goodyear passenger car tires with similar markings on them as the 15 tires which had been taken from his place of business. The tires were admitted into evidence over the defendant's objections. The witness placed the value of the tires at $20.00 each. He further testified that he had recovered these tires on the morning of July 21, 1976, from or near a pond located on property which the defendant occupied at that time. On cross-examination, the witness testified that he had seen two or three older model Dodge pickup trucks similar to the one he described.

Lieutenant Jerry Prather, of the Claremore Police Department, testified that on the morning of July 21, 1976, acting on the information he received from Delozier, he went to the defendant's property outside of town where he observed a red Dodge pickup with a black vinyl top. He then returned to town to get Officer Walker. About 10:00 a. m. as he and Officer Walker were returning to the defendant's property, the lieutenant learned that another officer had stopped a pickup of similar description. The lieutenant turned back to assist that officer and, upon his arrival at the scene, the witness observed the defendant and one Garren outside the vehicle talking to the officer. The witness did not see any tires in the pickup. Lieutenant Prather further stated that the defendant gave a Tulsa address as his residence, rather than the local address which the Lieutenant had. The defendant and Garren were allowed to leave following this brief questioning. The lieutenant and Officer Walker then drove to the Holland property, adjacent to the defendant's property. They obtained permission to enter onto this property and went to the fence line of the Clonce and Holland property. From this point the witness observed the defendant and Mr. Garren standing near the defendant's house. He also observed Deputy Freeman coming down the road in front of the defendant's property. Earlier that morning, Lieutenant Prather had called Officer Freeman to request that Freeman

meet him at the defendant's residence. The witness testified that the defendant and Garren apparently saw the deputy's vehicle coming down the road and started running to the barn. The two men emerged from the barn carrying two tires each, going toward a pond about 70 yards away into which three of the tires were thrown. The lieutenant testified that he saw the yellow crayon markings for Chrysler Products on the tires from where he was standing, about 58 yards away. At this time the lieutenant entered onto the defendant's property and placed the men under arrest. He identified State's Exhibits Nos. 1 and 2 as being two of the tires recovered from the vicinity of the pond. On cross-examination, he stated that at no time that morning did he attempt to get a search warrant. The lieutenant also stated that when the defendant gave him a different address from the local address which the lieutenant already had, the lieutenant assumed the defendant was involved in something.

The defense presented several witnesses who testified that they were visiting the defendant at his residence during the night of July 20, 1976. They testified that they had seen the defendant at his home between the hours of 5:00 a. m. to 9:00 a. m., July 21. The defense witnesses also testified that the defendant habitually left his keys in the pickup and allowed other people to borrow it. Defense Exhibits Nos. 1A and 1B, pictures depicting the defendant's property, were taken by defendant's wife from a point she determined Lieutenant Prather to have been standing the morning of July 21. Defense Exhibit No. 3 was a check for $1,500.00 signed by the defendant to Chrysler Products for the purchase of the pickup truck.

Following the defendant's presentation, the defendant moved for a directed verdict, which was denied. The jury returned a verdict of guilty following the first stage of the trial. The defendant failed to appear at the second stage of the trial wherein the State presented evidence of two prior convictions. The jury returned a verdict of guilty after a former conviction of a felony and set his punishment at ten years.

■ The defendant's first assignment of error is that the trial court erred in failing to direct a verdict for the defendant and that the evidence presented failed to prove the crime charged. The defendant contends that the State did not prove that he was involved in the actual taking of the tires as a requisite element of the crime of grand larceny. Defendant cites *Underhill v. State,* 70 Okl.Cr. 39, 104 P.2d 447 (1940), for his assertion that in order to be larceny it is necessary that the accused be involved in the taking of the property. But this Court also said in *Underhill* that:

> "[T]he possession of recently stolen goods is a strong circumstance to be considered in a larceny prosecution; but the possession of stolen property alone, and without any additional testimony, will not sustain a charge of larceny. It may be slight and wholly circumstantial, but there must be some evidence to connect the defendant with the original asportation. . . ." 104 P.2d at 449

See also, *Shockey v. State,* Okl.Cr., 524 P.2d 33 (1974).

In the instant case, the State did not rely solely upon defendant's possession of recently stolen property to establish larceny. Cf., *Mercer v. State,* 92 Okl.Cr. 37, 219 P.2d 1035 (1950). The evidence by the State established that a pickup similar to one owned by the defendant was seen leaving the alley with tires in it. The State's evidence showed that the defendant, a few hours after the theft, did not tell the police his correct address. Moreover, that same morning at the defendant's residence not far from Claremore, the defendant was seen trying to conceal the tires by throwing them into a pond. Although the State lacked direct testimony to establish the defendant's presence at the scene of the crime, the evidence presented did tend to circumstantially establish the defendant's involvement in the actual theft.

In *Lemmon v. State,* Okl.Cr., 538 P.2d 596, 599 (1975), we said:

> "[M]ere possession of missing property is not sufficient to convict a defendant of larceny, but when such a fact is supplemented with substantial facts inconsistent with the idea that said defendant obtained the goods in an honest manner, it then becomes a question of fact for the jury to pass upon. . . ." (Citation omitted)

We have also said:

> ". . . It is the fundamental rule that where there is evidence, although entirely circumstantial, from which the jury may reasonably and logically find the defendant guilty, the weight, credibility, and probative effect of such evidence is for the jury, and the Court of Criminal Appeals will not disturb the verdict for insufficiency of the evidence. . . ." (Citation omitted)

*Box v. State,* Okl.Cr., 505 P.2d 995, 997 (1973). Therefore, the jury having been properly instructed on the law and having been presented with evidence sufficient to establish the crime of Grand Larceny, we find the defendant's first assignment of error to be without merit.

■ In his second assignment of error, the defendant asserts that the trial court erred in failing to suppress State's Exhibits Nos. 1 and 2, the tires. The record indicates that the trial court had ruled to suppress eleven tires found in the barn. The defendant contends that the four tires retrieved from the vicinity of the pond were likewise inadmissible as being fruits of an illegal search made without a warrant. The defendant, relying on the case of *Blackburn v. State,* Okl.Cr., 575 P.2d 638 (1978), argues that these tires could not be admitted into evidence on the basis of the plain view doctrine. In *Blackburn,* the sheriff entered onto the premises leased by the defendants, pursuant to information the landlord had previously given the sheriff. This information had aroused the sheriff's suspicions that the defendants had marihuana. After the sheriff had inspected the defendants' yard and garden area, he called in three deputies to effect the arrest. In the course of the arrest, the house was searched as well, and contraband located in and near the house was confiscated. In *Blackburn,* we noted that the sheriff twice

had the opportunity to appear before a magistrate to obtain a warrant. We held that the seizure of the evidence without a warrant could not be justified on the basis of plain view where the search was made, lacking exigent circumstances, and where the discovery of the evidence was not inadvertent.

In the instant case, the facts show that from a surveillance point where he had permission to be, Lieutenant Prather observed the defendant exit a barn carrying tires. The lieutenant had reason to believe that these tires were stolen property. Moreover, the tires were apparently in danger of being thrown into the pond. Unlike *Blackburn,* the initial intrusion by the police onto the defendant's premises resulted from the exigent circumstance of the defendant running from the barn with the tires, apparently intending to conceal them. Another distinction from *Blackburn* is that until the police saw the tires being carried by the defendant, they had no actual knowledge that the tires were on the premises. The police having established surveillance from the neighboring property, were obviously suspicious of the defendant. However, it was the defendant's own act of attempted concealment that inadvertently led to the discovery of the tires. We conclude that *Blackburn* is not controlling in the case at issue.

Rather, the present situation falls within the principle established in *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), wherein the United States Supreme Court said "the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects' is not extended to the open fields." The lieutenant had reasonable suspicion to investigate the defendant. Pursuant to this investigation, he established a lawful surveillance point. In the course of this surveillance, the defendant brought into an open area away from his house and adjacent buildings, the fruits of the crime which the lieutenant was investigating. We conclude, therefore, that the evidence thus obtained did not violate the defendant's right to be free from unreasonable search and seizure, and was properly admitted into evidence.

■ Defendant's final assignment of error is based upon the supposed irregularity of the second stage proceedings of the bifurcated trial and improperly admitted evidence during that stage. Defendant begins by alluding to the fact that the penalty phase was conducted in his absence. It would appear from the record that the defendant voluntarily absented himself from this stage of trial. A defendant waives his right to be personally present where he voluntarily absents himself during the trial. *Ware v. State,* Okl.Cr., 556 P.2d 1073 (1976), and *Warren v. State,* Okl.Cr., 537 P.2d 443 (1975). No error resulted from the continuance of the trial without the defendant's presence.

■ Defendant also argues that fundamental error occurred from the judge's written note to the jury after it retired to determine the verdict. The transcript shows that after the jury had retired to deliberate, it returned to open court with both State and defense attorneys present to ask some questions. At the end of this session, the judge told the jury that if they had any more messages they could communicate with the court in writing. The defense attorney was present when the judge made this statement and interposed no objection to it. Thereafter, the written communication occurred with which the defendant finds fault. The record shows that the jury asked what the difference in meaning was between the terms "to run consecutively" and "shall run concurrently." The judge replied:

> " 'To run consecutively' means that one sentence does not commence until the one before it is served, following one after the other. 'Shall run concurrently' means that the sentences, when there are more than one, are to operate at the same time, to run together."

The jury also asked, "How did [defendant] get to Indiana from El Reno?" The response of the judge was, "Unless this information is contained in the documents intro-

duced into evidence, it is not available to you."

We do not agree with defendant's argument that this communication was fundamental error. This Court acknowledged in *Wilson v. State*, Okl.Cr., 534 P.2d 1325 (1975), that a presumption of prejudice to the defendant does arise when a communication between judge and jury occurs after the jury has retired for deliberation. In addition, we held that this rebuttable presumption could be overcome on appeal if "this Court is convinced that on the face of the record no prejudice to the defendant occurred." We do not think the judge's clarification as to the difference in meaning between concurrently and consecutively was prejudicial to the defendant. The judge's response to the second question posed by the jury served only to refer them to information already made available to them, and imparted no additional knowledge. *Bosin v. State*, Okl.Cr., 565 P.2d 1061 (1977).

In the remainder of this assignment of error, the defendant challenges the admissibility of State's Exhibits Nos. 3, 3A, 4 and 4A, on various grounds. First, the defendant argues that State's Exhibit No. 4A, which includes the judgment and commitment document and the court appearance docket from the United States District Court for the Southern District of Indiana, does not establish when the defendant completed his sentence so as to determine whether the limitation of 21 O.S.Supp.1977, § 51A, should be invoked. This statute provides:

"No person shall be sentenced as a second and subsequent offender under Section 51 of Title 21, or any other section of the Oklahoma Statutes, when a period of ten (10) years has elapsed since the completion of the sentence imposed on the former conviction; provided, said person has not, in the meantime, been convicted of a misdemeanor involving moral turpitude or felony."

In *Nipps v. State*, Okl.Cr., 576 P.2d 310 (1978), we construed that the term "completion of the sentence" meant the day when "the Department of Corrections relinquished their control of the defendant and unconditionally released him."

The defendant contends that the State should have shown when he completed his sentence to establish that the prior convictions were not barred by 21 O.S.Supp. 1977, § 51A. We do not agree with the defendant that the burden is on the State to prove when a defendant completed his sentence. The Statute provides a benefit to those defendants who fall within its terms. To be afforded this benefit, a defendant merely has to come forward with information that is readily available to him and is easily susceptible to confirmation. The defendant, therefore should be the one to raise this bar to the State's proof of former convictions.

Should the situation arise where the State seeks to admit evidence of a former conviction which has been completed ten years prior thereto, then the defendant should move for a hearing outside the presence of the jury to establish the date the sentence of the prior conviction was completed. The judge may then rule on the competency of the evidence sought to be admitted as to the former conviction. This procedure would prevent incompetent evidence being presented to the jury. This evidentiary hearing would also preclude the jury from obtaining information that would improperly allow it to determine the ratio of years actually served to years sentenced and the possibility of prejudice to the defendant resulting therefrom. See, *Jones v. State*, Okl.Cr., 554 P.2d 830 (1976).

In the instant case, the defendant does not claim that 21 O.S.Supp.1977, § 51A, was applicable to him. Rather, he complains that the State failed to show it was not applicable. Since the record evidence of prior convictions presented by the State was uncontradicted, we conclude that such evidence was competent to establish the prior convictions as still viable within § 51A. See, *Cervantes v. State*, Okl.Cr., 556 P.2d 622 (1976) and *Stanford v. State*, Okl. Cr., 363 P.2d 515 (1961).

■ Second, the defendant complains that State's Exhibits Nos. 3 and 3A were inadmissible. Defendant contends that the State did not show that the judgment was final and, therefore, it should not have been admitted. The appearance docket, State's Exhibit No. 3A, shows no entry to appeal, and being uncontradicted, we hold that this was sufficient to establish that the judgment and commitment was final and not appealed. *Cervantes v. State,* supra, and *Linebarger v. State,* Okl.Cr., 527 P.2d 178 (1974). In relation to State's Exhibit No. 3A, the defendant also asserts that it was irrelevant and was admitted only to prejudice the defendant. However, the judgment and commitment did tend to establish that no appeal was lodged. It was also relevant to show that the defendant was represented by counsel at the earlier proceedings as required in *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

■ With reference to State's Exhibit No. 3, the judgment and commitment from the United States District Court for the Western District of Oklahoma, defendant says that the lack of authentication in compliance with 12 O.S.1971, § 485, rendered it inadmissible. We note that the proof of the second former conviction offered by the State from the United States District Court for the Southern District of Indiana was duly authenticated under Section 485. Since the jury found the defendant guilty after one former conviction, the fact that the document from the United States District Court for the Western District of Oklahoma was not authenticated under Section 485, is irrelevant. However, we would point out effective October 1, 1978, under the New Evidence Code of 12 O.S., ch. 37, § 902, (S.B. No. 276, effective October 1, 1978) that the certified copy of the judgment and commitment from the federal court in Oklahoma without the triple certification, would be admissible.

■ Third, the defendant argues that State's Exhibit No. 3A and 4A were prejudicial to him. Defendant claims that the reference on State's Exhibit No. 3A to bank robbery where State's Exhibit No. 3 charged conspiracy and larceny of a bank, was prejudicial. He also asserts that prejudice resulted from the jury's being given the information on the appearance docket in State's Exhibit No. 4A, which shows he was initially charged with first degree murder, but was adjudicated guilty of voluntary manslaughter following a government recommendation for a lesser included offense. Defendant claims further prejudice resulted from the judgment and commitment in State's Exhibit No. 4A, which details the allegations of the voluntary manslaughter charge. Although extraneous information contained in these documents could have been deleted by the trial judge, the defendant has failed to show that he was prejudiced. The record shows that the jury was instructed under 21 O.S.Supp.1977, § 51(B), that they could sentence the defendant to 25 years.[1] The jury, however, on a finding of guilt after one former conviction of a felony sentenced the defendant to ten years within the provisions of 21 O.S.Supp.1977, § 51(A). Under these circumstances, we cannot say that the extraneous information contained in State's Exhibits Nos. 3A and 4A was prejudicial to the defendant.

■ Finally, the defendant propounds that the three sections of the United States Code, under which he was charged in these two prior convictions, cannot be characterized as penitentiary offenses under Oklahoma law in accordance with our decision in *Fischer v. State,* Okl.Cr., 483 P.2d 1165 (1971). In *Fischer* we held that under 21 O.S.1971, § 54, a foreign conviction could be used to enhance punishment under the Oklahoma Subsequent Offender's Statute if the foreign offense would be a penitentiary offense under Oklahoma law. Accordingly, we ruled therein that the offense of trans-

---

1. Since defendant's trial, this Court has held 21 O.S.Supp.1977, § 51(B), unconstitutional in *Thigpen v. State,* Okl.Cr., 571 P.2d 467 (1977).

porting in interstate commerce forged checks could not be used against the defendant, since such was not an offense punishable under Oklahoma law by imprisonment in the penitentiary. See also, *Vassar v. State,* Okl.Cr., 328 P.2d 445 (1958).

The former convictions with which the defendant herein was charged under federal law were conspiracy and larceny of a bank, and voluntary manslaughter. These charges were punishable with imprisonment. Likewise, these crimes could have been punished under the relevant state laws of Oklahoma at the time committed.[2] We conclude that the defendant's third assignment of error is without merit.

Therefore, finding no error in either stage of the trial which would require reversal or modification, the judgment and sentence appealed from is *AFFIRMED.*

BUSSEY, P. J., and BRETT, J., concur in result.

---

2. Title 21 O.S.1961, § 421 and § 424, for conspiracy; 21 O.S.1961, § 801, for bank robbery, and 21 O.S.1961, § 711 and § 715, for first degree manslaughter.