**Carroll Evans GREGG, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–90–1158.**

Court of Criminal Appeals of Oklahoma.

Dec. 4, 1992.

Rehearing Denied Jan. 11, 1993.

C. Merle Gile and John Gile, Trial Counsel, Mac Oyler, Appellate Counsel, Oklahoma City, for appellant.

Barry Albert, Asst. Dist. Atty. Trial Counsel, Susan B. Loving, Atty. Gen., Steven S. Kerr, Asst. Atty. Gen., Appellate Counsel, Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Carroll Evans Gregg, appellant, was tried by jury and convicted of nineteen counts of Lewd or Indecent Acts With a Child Under Sixteen, (21 O.S.Supp.1983, § 1123) (Counts 1, 2, 4, 5, 6, 7, 9, 10, 11, 16, 19, 21, 23, 25, 27, 28, 30, 34 & 37) twelve counts of Oral Sodomy, (21 O.S.1981,

§ 886) (Counts 14, 15, 17, 26, 29, 31, 35, 36, 39, 40, 42 & 43) four counts of Second Degree Rape (21 O.S.Supp.1984, § 1111; 21 O.S.Supp.1986, § 1114) (Counts 32, 33, 38 & 41) and three counts of First Degree Rape (21 O.S.Supp.1984, § 1111; 21 O.S.Supp. 1986, § 1114) (Counts 20, 22, & 24) in Oklahoma County District Court, Case No. CRF-89-4690, before the Honorable Charles L. Owens, District Judge.[1]

On August 30, 1989, members of the Nichols Hills Police Department conducted a search, pursuant to a warrant, of appellant's residence. During the search officers found a video tape of appellant and a young girl engaged in various types of sexual activity.

In his first assignment of error, appellant contends that the trial court erred in refusing to grant his request for a change of venue. Appellant made a pretrial motion for change of venue based on pretrial publicity. The trial judge reserved ruling on the motion until after the jury was selected, at which time the motion was overruled.

In support of his motion for change of venue before the trial court, appellant submitted the statutorily required affidavits wherein each affiant expressed the belief that appellant could not receive a fair trial in Oklahoma County due to pretrial publicity. Additionally, appellant submitted numerous newspaper articles concerning the crime and appellant's arrest. In addition to the foregoing, appellant points to the fact that most of the potential jurors had heard or read about the case, and asks this Court to reverse his conviction.

■ A motion for change of venue is left to the sound discretion of the trial court and its decision will not be disturbed absent abuse. *Shultz v. State*, 811 P.2d 1322, 1329 (Okl.Cr.1991). Consistent with this standard of review, "[e]ven if sufficient reasons exist so that the trial court would have been justified in granting a motion to change venue, we will not reverse the lower court's decision unless the circumstances surrounding the trial compel it." *United States v. Williams*, 897 F.2d 1034, 1037 (10th Cir.1990).

■ There is a rebuttable presumption that the accused can receive a fair trial in the county in which the offense occurred and the burden of persuasion is on the accused, who must show actual exposure to the publicity and resulting prejudice by clear and convincing evidence. Merely showing that pretrial publicity was adverse to him is not enough. *Price v. State*, 782 P.2d 143, 146 (Okl.Cr.1989).

■ In the instant case, voir dire examination revealed that eleven of the twelve jurors had been exposed to pretrial publicity concerning the case. This fact alone is not dispositive of a motion for change of venue, as we have held that a defendant is not entitled to jurors who are completely ignorant of the facts. *Wilkett v. State*, 753 P.2d 383, 387 (Okl.Cr.1988). We note that all of the jurors who received pretrial exposure stated that they had not formed an opinion as to appellant's guilt or innocence. All jurors avowed they could fairly and impartially judge the case based on the evidence presented at trial. In those instances where a prospective juror harbored preconceived notions concerning appellant's guilt or appeared unwilling or unable to judge the case impartially, the trial judge excused the venireperson for cause. On this record, we find that appellant has failed to demonstrate prejudice and accordingly hold that the trial court did not abuse its discretion in denying appellant's motion for change of venue.

■ As part of this proposition, appellant contends that in the absence of a change of venue the trial court should have

---

1. The Information alleged that Counts 1 through 10 were committed during or about the summer of 1985. Counts 11 through 27 were alleged to have been committed during or about the winter of 1986. Counts 28 through 33 were alleged to have been committed during or about the fall of 1987. Counts 34 through 43 were alleged to have been committed during or about the winter of 1987 and early 1988. The jury returned verdicts of not guilty for Counts 3 and 8, (Indecent or Lewd Acts With a Child Under Sixteen) 12, (Crime Against Nature) 13, (Second Degree Rape) and 18 (Anal Sodomy).

granted his motion to individually voir dire prospective jurors. As with a motion for change of venue, the decision with respect to individual voir dire is a matter left to the sound discretion of the trial judge. *Glenn v. State*, 749 P.2d 121, 126 (Okl.Cr.1988). The existence of extensive pretrial news coverage does not itself demand individual or sequestered voir dire. *Vowell v. State*, 728 P.2d 854, 858 (Okl.Cr.1986). The crux of the issue is whether appellant can receive fair and impartial jurors. *Nauni v. State*, 670 P.2d 126, 130 (Okl.Cr.1983). In light of the extensive voir dire conducted in this case, and with consideration given to the jurors apparent willingness to judge the case on the evidence presented at trial, we find no abuse of discretion in the trial court's refusal to allow individual voir dire.

Incorporated within this proposition of error, are appellant's assertions that he was denied a fair and impartial jury as a result of the conduct of the trial judge. Specifically, appellant alleges that certain comments from the trial judge caused jurors to "knuckle under" and become fearful of expressing their biases against appellant. The record does not support appellant's assertions.

■ During the course of voir dire, prospective jurors were informed that if selected it would be necessary for them to view sexually explicit evidence. The trial judge told the panel that "I certainly take distaste to jurors who just exercise some reason to avoid a jury simply because you find it a bit uncomfortable." (Tr. 19). We find that the trial judge's comments were designed to instill a sense of duty in jurors who were faced with the uncomfortable prospect of viewing sexually explicit material.

■ On several occasions prospective jurors stated that they had formed an opinion as a result of media accounts of the crime. In these instances the trial judge stressed the importance of an impartial jury and at one point told the panel that if anyone had preconceived notions that "I don't want any of you to be afraid to tell me.... I want to know that and [I will] let you be excused very promptly." (Tr. 47). We find nothing in the conduct of the trial judge which would have adversely impacted the selection of an impartial jury and accordingly deny this assignment of error.

In his second assignment of error, appellant contends that the trial court erred in overruling his Motion to Suppress. On the basis of five identical affidavits submitted by Officer Richard Mask, the magistrate issued warrants authorizing the search of the person of appellant, (O.R. 13) a 1977 Chevrolet Malibu station wagon, (O.R. 17) appellant's office, (O.R. 21) appellant's home, (O.R. 25) and a 1984 Lincoln Continental (O.R. 29). Each affidavit contained the following language:

On 5–13–89 this detective received the assignment to conduct a follow-up in reference to a possible Indecent Liberties with a Minor under 16 years of age case. On 5–17–89 this detective met with [J.H.] W/F 3–7–54 who advised that during the year of 1986 she found a video tape in the trunk of a vehicle belonging to Carroll Gregg and that upon viewing the tape she saw that it contained film of Carroll Gregg and a minor child named [S.S.] W/F 6–6–73 engaged in a sexual act. She stated that [S.S.] appeared to be approximately 12–13 years of age in the tape and that the subject Carroll Gregg was performing cunnilingus on [S.S.]. [J.H.] was employed by Carroll Gregg as a live in baby sitter for approximately ten years. She also stated that she has seen sexually explicit material at the subjects residence which had arrived in the mail. A check with U.S. Customs revealed that Carroll Gregg's name was found on the client list of a now arrested prominent west coast pornography specialist known as "Black Cathy". [J.H.] further advised that she herself had a sexual relationship with the subject Carroll Gregg beginning at the age of twelve which continued until she was approximately 22 years of age. She states that during this period the subject Gregg photographed her in the nude and sometimes in costume.

On 5–23–89 this detective interviewed [D.R.] W/F 10–28–57, this being Carroll

Gregg's ex-stepdaughter who advised that her natural mother, [B.B.] W/F 10–28–57, was married to Carroll Gregg for two years when [D.R.] was approximately 7 to 8 years of age. She stated that during the time of her mother's marriage to Carroll Gregg, the subject Gregg would enter her bedroom at night and undress her while she pretended to be asleep. She further stated that Carroll Gregg would set up a camera on a tri-pod and photograph her in the nude. He would sometimes set the camera so that he could be in the photographs with her. She further advised that the subject Carroll Gregg attempted to push his penis into her mouth and on occasions would ejaculate onto her. [D.R.] advised that this situation ended when her mother found nude pictures of her and the subjects niece in Carroll Gregg's billfold.

On 6–29–89 the above information concerning [D.R.] was confirmed by her mother [B.B.] who advised that she had found approximately 10 photographs of her daughter [D.R.] and the subject Carroll Gregg both nude. [B.B.] further advised that there were photographs of Carroll Gregg's niece lying nude on a bed. [B.B.] states that these photos were returned to Carroll Gregg in their divorce settlement. [B.B.] further states that she has seen child pornography in Carroll Gregg's residence and that he has what she stated, a large collection of pornographic movies depicting children in explicit sexual activity and that his collection also consisted of child pornography magazines.

On 6–14–89 this detective interviewed [S.S.] W/F 6–6–73 who advised that she did have a sexual relationship with the subject Carroll Gregg beginning when she was nine years of age. She states that the subject Gregg has paid her in the past to perform cunnilingus on her while video taping this act at his residence. She further advised that the subject Gregg began having sexual intercourse with her when she was ten years of age, which continued up until approximately three months ago. [S.S.] further states that she has posed in the nude on numerous occasions in which photographs were taken in which Carroll Gregg paid her for them. She states that she has seen numerous photographs of other nude children in the subject Gregg's bedroom at his residence, including some photographs of [J.H.] in the nude wearing a costume.

As a result of my training and experience, I have found in the past investigations individuals who are involved in the sexual exploitation of children and child pornography, rarely if ever, dispose of their sexually explicit materials, that many times that this type of material is used in the seduction of children and that these materials are almost always maintained in the privacy and security of the suspects home and or other places to which the subject has control or access to. Affiant further states that the suspects that collect and maintain child pornography materials will and do possess these materials for long periods of time for several years. This type of behavior has been documented by other investigators throughout the country in similar investigations. I, the affiant, have personal knowledge that the subject Carroll Evans Gregg is described as follows: he is a white male, DOB: 10–25–33, being approximately 5′8″, 162 lbs., brown hair brown eyes, SSN.... He currently resides at 1216 Sherwood Ln. Nichols Hills, Ok and is listed in the Nichols Hills phone directory and Nichols Hills utilities as the payor of the bills from this address. He can also be connected with the business of G & K Labs Ltd. located at 2600 N. Oklahoma through the Secretary of State in which he has filed with for corporation of his business. Checks through the Oklahoma Tax Commission shows the 1984 Lincoln Continental ... to be registered to Carroll Gregg at his home address.... This check also showed the 1977 Chevrolet Malibu Stationwagon ... to be registered to G & K Labs....

(O.R. 15–16, 19–20, 23–24, 27–28, 31–32).

■ Prior to discussing the merits of appellant's various arguments regarding

the sufficiency of the affidavit for search warrants, we determine the appropriate standard under which appellant's arguments shall be judged. At the time the search warrants in the instant case were issued, this Court reviewed claims questioning the validity of search warrants under the *Aguilar/Spinelli*[2] standard if the claim alleged a violation of the Oklahoma Constitution. *Merry v. State*, 766 P.2d 1377 (Okl.Cr.1988). Subsequent to the search in this case but prior to appellant's trial, this Court embraced the so called "totality of the circumstances" test enunciated in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), for state as well as federal constitutional claims. *Langham v. State*, 787 P.2d 1279, 1281 (Okl.Cr.1990). Appellant asserts that *Langham* cannot be applied retroactively and therefore the affidavit for search warrants should be judged under the *Aguilar/Spinelli* rather than the *Gates* standard. We disagree. The Tenth Circuit, rejecting a similar contention, reasoned:

> Defendants suggest on appeal that *Gates* should not be applied to the present case because it was decided after their arrests were made. The High Court itself, however, has had no compunction about applying *Gates* retroactively to events occurring long before those presently at issue. *See Massachusetts v. Upton*, [466] U.S. [727], 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984). Retroactive application of decisions is not inappropriate when it cannot frustrate any legitimate reliance interest, and, as the Court noted in *United States v. Ross*, 456 U.S. 798, 824 n. 33, 102 S.Ct. 2157, 2172 n. 33, 72 L.Ed.2d 572 (1982): 'Any interest in maintaining the status quo that might be asserted by persons who may have structured their business of distributing narcotics or other illicit substances on the basis of judicial precedents clearly would not be legitimate.'

*United States v. Swingler*, 758 F.2d 477, 487 n. 3 (10th Cir.1985). We find the above reasoning equally applicable to the instant case and accordingly decline appellant's invitation to apply the *Aguilar/Spinelli* standard to the facts presently before us.

■ Under the *Gates* standard, the task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, there is a substantial basis for concluding that contraband or evidence of a crime will be found in a particular place. *Gates*, 462 U.S. at 238–39, 103 S.Ct. at 2332–33. A reviewing court need only ensure that the issuing authority had a substantial basis for concluding that probable cause existed. *United States v. Rutherford*, 824 F.2d 831, 835 (10th Cir.1987). Additionally, we must review the magistrate's finding of probable cause with "great deference." *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331.

■ Appellant first argues that the allegations set forth in the affidavit were stale. While it is true that "[p]robable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched," *United States v. Snow*, 919 F.2d 1458, 1459–60 (10th Cir.1990), it is equally true that "[t]he determination of probable cause is not merely an exercise of counting the days or even months between the facts relied on and the issuance of the warrant." *Williams*, 897 F.2d at 1039. Rather, "timeliness depends upon the nature of the underlying circumstances and concepts." *United States v. Reyes*, 798 F.2d 380, 382 (10th Cir.1986). "Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time." *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972). On the other hand, "where the affidavit properly recites facts indicating activity of a protracted and continuous nature ... the passage of time becomes less significant," and facts otherwise remote in time may retain their relevance. *Id.* We find that the allegations contained in the affidavit, when viewed as a whole, provided

---

**2.** *See Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

the magistrate with a substantial basis for concluding that criminal conduct of an on-going nature existed at the time that the warrants were issued. Thus, we conclude that the information used to support the issuance of the search warrant was not impermissibly stale.

■ Appellant's next assignment of error under this proposition, is that the information contained in the affidavit for search warrant failed to set forth a recent time frame which he claims is essential to a finding of probable cause. Appellant's argument presupposes the application of the *Aguilar/Spinelli* standard. While the date that the information contained in the affidavit was obtained was a necessary component of the *Aguilar/Spinelli* standard, *see Merry*, 766 P.2d at 1379, the same is not necessarily true under *Gates*. *See United States v. Miles*, 772 F.2d 613, 616 (10th Cir.1985). We find that the affidavit, which traced a continuing pattern of criminal conduct including the possession of the video tape of S.S. over a period of several years, sufficient to support the magistrate's finding of probable cause.

■ Next appellant claims that the affiant officer knew that S.S. was not credible and intentionally withheld this information from the issuing magistrate. Additionally, appellant claims that S.S.'s statement indicating that she last had sexual intercourse with appellant "three months ago" was false. Appellant contends that because the magistrate was deprived of the above information, the probable cause determination should be vitiated. We disagree. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), held:

> [W]here the defendant makes a substantial showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Id.* at 155–56, 98 S.Ct. at 2676–77.

At preliminary hearing, Officer Mask acknowledged that he had been told by several people that S.S. did not always tell the truth. (P.H. 40). Appellant claims that the failure of Officer Mask to include this information in the Affidavit for Search Warrant should result in the suppression of the items seized under the warrant. We do not find that the omission of the officer's suspicions concerning the credibility of S.S. to be violative of *Franks*. Officer Mask went to great lengths to investigate the allegations made by S.S. The affidavit contained information from various sources which tended to corroborate the story of S.S.; most notable was J.H.'s claim that she had viewed a video tape of appellant and S.S. engaged in sexual acts. Under the facts presented, Officer Mask's uncertainties regarding S.S.'s credibility were not necessary to the magistrate's contemplation of probable cause.

■ We next turn to appellant's claim that S.S. misrepresented the last time that she and appellant had sexual relations. In the affidavit, S.S. places the time frame at "three months ago" but at preliminary hearing S.S. testified that the last time she had any sexual activity with appellant was in January 1988. Nothing before us indicates that the affiant knew that S.S.'s statement was inaccurate. We find that the inaccuracy was not material to the finding of probable cause. "To determine this issue, we ask whether the warrant would have been issued if the judge had been given accurate information." *United States v. Page*, 808 F.2d 723, 729 (10th Cir.1987), *cert. denied* 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 683 (1987). When the information contained in the affidavit is examined in toto, the fact that S.S. last had sexual contact with appellant in January, 1988, rather than March, 1989, is inconsequential to the finding of probable cause. The earlier hiatus of the sexual activity did not diminish the likelihood that appellant was still in possession of the materials sought in the warrant.

■ Finally, appellant, relying on *Fletcher v. State*, 735 P.2d 1190 (Okl.Cr. 1986), *overruled on other grounds, Newton v. State*, 824 P.2d 391 (Okl.Cr.1991); *State v. Rhine*, 773 P.2d 762 (Okl.Cr.1989),

contends that the magistrate's simultaneous issuance of five search warrants on the basis of affidavits differing only in the description of the places to be searched was error. In *Fletcher*, two warrants authorizing the search of separate locations were issued. The search warrants and accompanying affidavits were identical except for the description of the places to be searched. The preliminary hearing magistrate ordered the suppression of all of the evidence seized under the warrants because the same described property was alleged to be in two separate locations at the same time. The decision of the magistrate to suppress the evidence was reversed via a "Rule Six" appeal. This Court agreed with the rationale of the preliminary hearing magistrate and ordered that the evidence seized under the warrants be suppressed, stating:

> [I]t is apparent that had the warrants been read together, no search warrants would have been issued. With the exception of the addresses in which the property allegedly would be found, the affidavits were identical. We agree with the magistrate that in such a circumstance, the reliability of the informant was not established, and, therefore, probable cause did not exist to issue the warrants.

*Fletcher*, 735 P.2d at 1194.

In *Fletcher*, authorities sought thirty-five specifically described pieces of furniture. The affidavits alleged that the same thirty-five items of furniture were simultaneously located in separate places. The circumstances requiring reversal in *Fletcher* are not present in the instant case. Here, authorities were seeking a vast array of items and materials relating to child pornography. Under the parameters enunciated in *Gates, supra,* we find that the affidavit presented the magistrate with sufficient information from which he could logically conclude that the items sought were located in the places described by the warrants. Because we are not presented with affidavits avowing that specifically described property is simultaneously located at different places, the rationale of *Fletcher* does not require reversal in the instant

case. Accordingly, this assignment of error is denied.

In his third assignment of error, appellant contends that the trial court erred in removing appellant from the courtroom and then conducting proceedings in his absence. Appellant points to eighteen occasions where he was excused from the courtroom prior to the jury. In the vast majority of these occasions, the jury was simply admonished not to discuss the case during the impending recess. On some of these occasions defense counsel argued various motions in appellant's absence. At no time did the trial court conduct proceedings in the absence of defense counsel.

A defendant has a due process right to be present at his trial "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder v. Massachusetts,* 291 U.S. 97, 105–06, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934); *See also Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987); *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985). However, "the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Snyder,* 291 U.S. at 107–08, 54 S.Ct. at 332–333. Additionally, we note that "the district court need not get an express 'on the record' waiver from the defendant for every trial conference which a defendant may have the right to attend." *Gagnon,* 470 U.S. at 528, 105 S.Ct. at 1485.

In Oklahoma, a defendant must be personally present at the trial if he is being prosecuted for a felony. 22 O.S.1981, § 583. This point finds further support in 22 O.S.1981, § 912, which mandates defendant's presence when a verdict is returned. Appellant, relying on *Booze v. State,* 390 P.2d 261 (Okl.Cr.1964), maintains that the right of an accused to be personally present at a felony trial cannot be waived. We have previously determined that the right of an accused to attend a felony trial is not an absolute right; it may be waived.

*Booze* was overruled in *Peters v. State*, 516 P.2d 1372 (Okl.Cr.1973), where we held that through disruptive conduct, an accused may waive his right to attend the trial. Further, we have consistently held that an accused's right to be present in open court during a felony trial is waived by his voluntary absence. *Royal v. State*, 761 P.2d 497, 498–99 (Okl.Cr.1988); *Clark v. State*, 718 P.2d 375, 377 (Okl.Cr.1986); *Love v. State*, 675 P.2d 466, 467–68 (Okl.Cr.1984); *Sonnier v. State*, 597 P.2d 771, 773 (Okl. Cr.1979); *Delancy v. State*, 596 P.2d 897, 899 (Okl.Cr.1979); *Clonce v. State*, 588 P.2d 584, 589 (Okl.Cr.1979); *Ware v. State*, 556 P.2d 1073, 1075 (Okl.Cr.1976); *Parker v. State*, 556 P.2d 1298, 1302 (Okl.Cr.1976); *Warren v. State*, 537 P.2d 443, 444–47 (Okl.Cr.1975), *cert. denied* 422 U.S. 1047, 95 S.Ct. 2664, 45 L.Ed.2d 699 (1975); *Roberts v. State*, 523 P.2d 1150, 1151 (Okl.Cr. 1974).

■ Appellant does not contend, nor does the record support, a conclusion that the trial court prevented his attendance at any proceeding. From our review of the record it appears that the trial judge made every effort to comply with appellant's wishes. For example, prior to ruling, in chambers, on an evidentiary issue, the following occurred:

THE COURT: Before we start, gentlemen, let me ask: Your client is here. The defendant's here out in the courtroom. Do you want him here for this ruling?

MR. MERLE GILE: Not particularly.

THE COURT: He certainly may be if you—

MR. MERLE GILE: I believe—

MR. JOHN GILE: Why don't we let him on in.

MR. MERLE GILE: Let him in. That's fine.

THE COURT: We'll bring him in.

(Tr. 337).

The record reflects that the trial judge routinely excused appellant prior to excusing the jury in an attempt to keep appellant segregated from the jurors and spectators. After the State rested and immediately after excusing the jury, the following comments were made concerning appellant's absence:

THE COURT: I thought you wished him—

MR. JOHN GILE: He's got to go to the restroom, Your Honor.

THE COURT: All right.

MR. JOHN GILE: He'll be right back.

THE COURT: Well, I would have done it before so he wouldn't have to be in public.

MR. ALBERT: Probably going to mingle with the jury....

. . . .

Considering his voluntary statements in the hallway yesterday, he may taint the jury. He should be taken to jail.

THE COURT: We'll see. We'll come back when he's back.

(Tr. 384). On another occasion, the jury was excused while the instructions were being finalized. The trial judge explained appellant's absence to the jury as follows: "Members of the jury, I have permitted Mr. Gregg not to be here just to excuse you." (Tr. 442). In addition to the above referenced portions of the transcript, we note that appellant never expressed any dissatisfaction concerning his ability, or lack thereof, to attend any proceeding related to his trial. On all occasions where appellant requested to attend a proceeding, the trial judge complied. Accordingly, we conclude that on those occasions where proceedings were conducted in appellant's absence, it was due to appellant's choice. After a review of the record, we hold that appellant voluntarily absented himself from proceedings, which were at any rate, too inconsequential to the "fullness of his opportunity to defend against the charge" to raise to a level of a due process violation. *See Snyder*, supra.

■ In his fourth proposition of error, appellant advances several arguments professing his belief that the charges against him violate the prohibition against double jeopardy and/or constitute multiple punishment for the same act. We first address appellant's contention concerning multiple

punishment. Title 21 O.S.Supp.1987, § 11, provides in relevant part that,

> an act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions ... but in no case can it be punished under more than one; and an acquittal or conviction and sentence under either one, bars the prosecution for the same act or omission under any other.

Multiple charges and punishments are not prohibited under Section 11, where the criminal episode involves separate and distinct offenses consisting of dissimilar proof. *See Ashinsky v. State,* 780 P.2d 201, 208 (Okl.Cr.1989); *Salyer v. State,* 761 P.2d 890, 893 (Okl.Cr.1988); *Ziegler v. State,* 610 P.2d 251, 254 (Okl.Cr.1980); *Clay v. State,* 593 P.2d 509, 510 (Okl.Cr.1979). The fact that offenses occur in rapid succession does not negate a finding that the crimes are separate and distinct, as we explained in *Hoffman v. State,* 611 P.2d 267 (Okl.Cr.1980):

> It [the prohibition against double jeopardy] was not intended as a method of carte blanche extending to the accused the prerogative of committing as many offenses as he desired within the same transaction with the protective shield of permitting only one prosecution to arise and be pursued from that transaction.

*Id.* at 269. *See Tucker v. State,* 481 P.2d 167 (Okl.Cr.1971). Offenses are distinct and separate if they "are not mere means to some other ultimate objective, nor are the offenses included in some other offense, nor are they merely different incidents or facets of some primary offense." *Clay,* 593 P.2d at 510. Conversely, a continuing offense is "a transaction or series of acts set on foot by a single impulse, and operated by an unintermittent force, no matter how long it may occupy." *Estep v. State,* 11 Okl.Cr. 103, 143 P. 64, 66 (1914). Although appellant was in some instances convicted more than once for the same type of conduct,[3] we conclude after a review of State's Exhibit 1A, (the video tape) that a sufficient gap existed between each occurrence so that it cannot be said that the criminal conduct was uninterrupted. Accordingly, we find that individual crimes occurred which were properly charged under separate counts. *See Salyer v. State,* 761 P.2d at 893.

Next appellant contends that the series of sexual activity was set on foot by the single impulse to make each segment of the video tape. Apparently, it is appellant's contention that his decision to video tape acts of sexual conduct somehow immunizes him from prosecution for the sexual acts. Under appellant's theory, the prosecution could file only one charge for each segment or scene depicted on the video tape. This contention is not well taken. We have previously determined that the charges lodged against appellant were designed to punish distinct and separate conduct. Necessarily included in this determination is the finding that appellant's acts were not set on foot by a single impulse. We know of nothing in the prohibition against double jeopardy which would allow appellant to escape prosecution for criminal conduct because he decided to memorialize that conduct on video tape.

Finally, appellant claims that the failure of the State to elect which act it relied on for conviction was error. Appellant relies on *Cody v. State,* 361 P.2d 307 (Okl.Cr.1961), to support this contention. In *Cody,* the defendant was charged with First Degree Rape. Testimony at trial indicated that several acts of sexual intercourse occurred involving the victim. The case was reversed because it was unclear which act of sexual intercourse jurors relied upon to support the conviction and thus, appellant was denied the right to a unanimous verdict.

The concerns requiring reversal in *Cody* are not present in the instant case. Here, appellant was charged with separate counts in the same information pursuant to 22 O.S.1981, § 436, and different conduct

---

**3.** For example, in Counts 3 and 8 appellant is charged with Indecent and Lewd Acts. In each of these counts, the conduct supporting the charge is drinking the victim's urine from her urethra.

was used to support each count. We find that each conviction was based on a single act and therefore the principles of election discussed in *Cody* are not applicable. Accordingly, this assignment of error is denied.

While we find no merit in appellant's claims concerning double jeopardy or multiple punishment, our review of the video tape discloses no evidence to support Count 25. In this count appellant is alleged to have committed the crime of Indecent or Lewd Acts by "touching and feeling [the victim's] vagina and drinking the urine from her urethra...." (O.R. 135). The video contains no conduct, separate and apart from that charged in Count 21, capable of supporting the conviction as charged. We find that the evidence is insufficient to support appellant's conviction for Count 25. Accordingly, this Count is REVERSED and REMANDED with instructions to DISMISS.

■ In his fifth assignment of error, appellant contends that the statute of limitations should have barred all counts of rape and sodomy and many of the lewd molestation counts. At the time the crimes were alleged to have been committed, prosecution was required to commence within five years after the discovery of a crime of lewd or indecent acts and within three years of an act of rape or sodomy. 22 O.S.Supp.1983, § 152.

In support of his argument that the statute of limitations barred prosecution for the vast majority of the crimes charged, appellant points to his testimony at trial. Appellant testified that his sexual relationship with S.S. started in the latter part of 1984 and lasted until April of 1986. Appellant claimed that "[t]he periods that she's [S.S.] testified to are valid periods except that somebody has moved them forward. See, they've just been moved forward in time, that's all." (Tr. 398). On the other hand, the victim testified that the events depicted on States Exhibit 1A occurred during the summer of 1985, (Tr. 323) the win-

ter of 1986, (Tr. 326) the fall of 1987, (Tr. 328) and late 1987 or early 1988. (Tr. 331). Because the application of the statute of limitations turned on a factual dispute, i.e., when the acts occurred, we find that the matter presented a question of fact to be resolved by the jury. We note that the jury in the instant case was required to find, as an element of each crime charged, that the act occurred within the time periods set out in the second amended Information. Additionally, the jury was instructed that for all counts of rape and sodomy "the State must prove beyond a reasonable doubt that the acts alleged in said Counts occurred after August 31, 1986." (O.R. 182). We find that the record contains competent evidence from which the jury could have concluded that the alleged crimes occurred within the applicable limitations periods. We will not disturb the jury's finding.

■ Appellant next contends that he was improperly charged under 21 O.S.Supp.1983, § 1123, for acts which comprised Counts one through ten. The first Information filed by the State charged appellant with, inter alia, five counts of Forcible Oral Sodomy, two counts of Rape in the First Degree and three counts of Indecent or Lewd Acts.[4] The Information was amended to charge appellant with ten counts of Indecent or Lewd Acts. Appellant contends that language contained in Section 1123 prevents such an amendment. After setting forth the forbidden conduct, Section 1123 provides: "by acts not amounting to the commission of a crime against public decency and morality as defined by law ..." Appellant contends that the language of Section 1123 prevents the substitution of the rape and sodomy charges filed in the preliminary Information with the charges of Indecent or Lewd Acts found in the second amended Information. We disagree. While the above quoted language would preclude a prosecutor from charging acts constituting rape or sodomy under Section 1123, appellant here-

4. The preliminary Information alleged that one act of Forcible Oral Sodomy (Count 1) and one act of Indecent or Lewd Acts (Count 2) occurred

on or about July 15, 1985. Counts 3 through 10 were alleged to have occurred on or about August 15, 1986.

in was not charged with acts which constitute a crime against public decency and morality. The charging language of Counts 1–10 contained in the Second Amended Information, apprised appellant of what acts he must defend against at trial. The acts described do not amount to the commission of a crime against public decency as the language does not set forth acts describing rape or sodomy. Based upon the acts described in Counts 1–10, we find that appellant was properly charged under Section 1123.

We find no impropriety in the fact that the original charges of rape and sodomy were amended to charges of Indecent and Lewd Acts. This Court has consistently held that the prosecutor has sole authority to decide under which statute to file charges. *Williams v. State*, 794 P.2d 759, 761 (Okl.Cr.1990); *Dangerfield v. State*, 742 P.2d 573, 574 (Okl.Cr.1987); *Wolfenbarger v. State*, 710 P.2d 114 (Okl.Cr.1985). This assignment of error is denied.

In his sixth assignment of error, appellant contends that he was denied due process of law by the trial court's refusal to allow him to present "mitigating evidence." The trial court would not allow the introduction of evidence tending to show that the victim had engaged in sexual conduct with her father and several of her mother's boyfriends prior to her contact with appellant. Appellant contends that if the jury had received this information and realized that he was not the first to sexually exploit the victim the jury may have returned lesser sentences. The trial court refused to admit such evidence on two grounds: first, the evidence was inadmissable under 22 O.S.1981, § 750; second, the proffered testimony was not relevant.

This Court will not disturb a trial court's determination concerning the admissability of evidence unless a clear abuse of discretion is shown. *Ashinsky v. State*, 780 P.2d at 204. In the instant case we agree with the trial court's determination that the offered testimony was not relevant. The test of relevancy is whether the evidence has any tendency to make more or less probable a material fact in issue. *Behrens v. State*, 699 P.2d 156 (Okl.Cr.1985). The fact that appellant was not the only, or even the first, person to engage in criminal sexual conduct with the victim has no bearing on a material fact in issue in the instant case. Appellant has failed to show that the trial court abused its discretion in the exclusion of the proffered testimony. *See Carroll v. State*, 620 P.2d 416, 418 (Okl.Cr.1980).

Assuming that the failure to admit evidence concerning the victim's prior sexual history was error, appellant must demonstrate that he was prejudiced by the trial court's evidentiary ruling. *See Fitchen v. State*, 738 P.2d 177, 180 (Okl.Cr.1987). We fail to see how the exclusion of this evidence prejudiced appellant. In his brief appellant states, "[h]e knew about how she had been abused before she came to live with him and he took advantage of her condition." Appellant's claim that the jury would have viewed this circumstance in a mitigating light is based on pure speculation. It is equally plausible that the jury would view the fact that appellant knew the victim's history of sexual abuse and nevertheless took advantage of her situation and perpetuated the abuse, as a factor warranting even harsher punishment. For the foregoing reasons, we deny this assignment of error. Finding that the trial court did not abuse its discretion in excluding the evidence on the basis of relevance, we shall not consider whether Section 750 further precludes its admission.

In his seventh assignment of error, appellant contends that he was denied a fair trial by the conduct of the prosecutor. Appellant claims that the prosecutor improperly: placed details of the search warrant before the jury; referred to other bad acts committed by appellant; intimated that appellant was untruthful; interjected his personal opinion; and, made arguments which were not supported by the record.

Initially we note that the majority of the comments appellant cites as error were not objected to at trial. We review these comments for fundamental error only. *Huntley v. State*, 750 P.2d 1134, 1136 (Okl.Cr.1988). We find no fundamental error in these comments. In many instances where the comments did elicit an

objection at trial, the objection was sustained and the witness either did not answer the question or the jury was instructed to disregard the answer. We have held that admonishing the jury cures error in cases where the error cannot be said to be verdict determinative. *Stout v. State*, 693 P.2d 617, 627 (Okl.Cr.1984). Our review of the record discloses no such error. While we conclude that some of the prosecutor's comments and questions were unwarranted, we cannot conclude that these isolated instances deprived appellant of a fair trial and therefore reversal or modification is not warranted. *See* 20 O.S.1991, § 3001.1.

For the foregoing reasons, Count 25 is REVERSED and REMANDED with instructions to DISMISS. The Judgment and Sentence for all remaining Counts is AFFIRMED.

LANE, P.J., LUMPKIN, V.P.J., and BRETT and JOHNSON, JJ., concur.

## ORDER DENYING MOTION FOR REHEARING

Carroll Evans Gregg, Petitioner, was tried by jury and convicted of nineteen (19) counts of Lewd or Indecent Acts With a Child Under Sixteen, twelve (12) counts of Oral Sodomy, four (4) counts of Second Degree Rape and three (3) counts of First Degree Rape in Oklahoma County District Court, Case No. CRF–89–4690. He was sentenced to one hundred thirty one (131) years imprisonment.

By published opinion handed down December 4, 1992, this Court reversed and remanded with instructions to dismiss one (1) count of Lewd or Indecent Acts With a Child Under Sixteen, and affirmed judgment and sentence for the remaining counts. Petitioner is now before the Court on a Petition for Rehearing.

Petitions for Rehearing are governed by Rule 3.14 of the Court of Criminal Appeals. 22 O.S. Ch. 18, App. As provided by Rule 3.14, a Petition for Rehearing shall not be filed as a matter of course but only for two reasons:

(1) That some question decisive of the case and duly submitted by the attorney of record has been overlooked by the Court, or

(2) That the decision is in conflict with an express statute or controlling decision to which the attention of this Court was not called either in the brief or in oral argument.

The petition filed herein is, in large part, a reiteration of the arguments contained in the original brief on appeal. Those issues have been fully addressed in the opinion handed down and will not be reconsidered. Additionally two (2) novel issues are submitted which do not come within the parameters of a Motion for Rehearing. These two issues are ineffective assistance of trial counsel, and insufficient evidence to support conviction for Count 27. These issues are not properly before us and will not be addressed.

 Petitioner asserts one issue which is properly before us, for it raises the question whether the opinion handed down in this case is in conflict with a controlling decision of this Court.

Petitioner argues the opinion handed down in his case is in conflict with *Conner v. State*, 839 P.2d 1378 (Okl.Cr.1992). In that case, the trial judge appointed counsel to represent a child victim without the statutory authority to do so. Counsel actively participated in the trial and advocated conviction through vigorous cross-examination of witnesses, and closing argument to the jury. We found this active advocacy caused reversible error for the appointment of counsel was unauthorized, and counsel's active advocacy created an unauthorized two-against-one situation.

Petitioner argues the appointment of counsel for the child victim, S.S., likewise requires reversal in this case. We disagree. Initially we note counsel was not appointed absent statutory authority by the criminal trial judge. Counsel had been properly appointed to represent S.S. in a pending juvenile matter which was separate from this criminal trial. Therefore counsel's appointment, unlike that in *Conner* was not unauthorized. Furthermore, counsel's participation in trial was minimal.

The transcript indicates counsel for S.S. was introduced to the jury and was present throughout the trial. Her advocacy was

limited to passing a note to the prosecutor during *voir dire*, advising the trial judge in a bench conference outside the hearing of the prospective jurors that she may have represented one of the veniremen in the past, and arguing a Motion in Limine to the judge in chambers. Counsel never asserted herself in front of the jury. Even in chambers counsel did not place the appellant in a "two against one" situation, for the State and the defense both wanted certain evidence of the child's prior sexual activity admitted. It was excluded due to efforts of the child's attorney. Under the circumstances we find counsel's appointment to fall within the category of harmless error carved in *Conner*, 839 P.2d at 1380.

IT IS THEREFORE THE ORDER OF THE COURT that the Motion for Rehearing filed herein is DENIED.

IT IS SO ORDERED.

/s/ James F. Lane
JAMES F. LANE, Presiding Judge
/s/ Gary Lumpkin
GARY LUMPKIN, Vice Presiding Judge
/s/ Charles A. Johnson
CHARLES A. JOHNSON, Judge